**People of the State of Illinois, Defendant in Error, v. John Gaston, Plaintiff in Error.**

Gen. No. 51,264.

First District, Third Division.

July 20, 1967.

■■■■■■

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

Edward M. Keating, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton E. Friedman, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Four indictments were returned against the defendant, charging him as follows:

Indictment No. 61–549—Armed Robbery
Indictment No. 61–550—Armed Robbery
Indictment No. 61–551—Armed Robbery
Indictment No. 61–552—Assault with intent to Commit Robbery.

Defendant pleaded not guilty to the charge in Indictment No. 61–551 and on a jury trial was convicted and sen-

■

tenced to a term of ten years to fifty years in the penitentiary. He then pleaded guilty to the remaining charges and was sentenced as follows:

Indictment No. 61–549—Ten years to life;
Indictment No. 61–550—Ten years to life;
Indictment No. 61–552—One year to fourteen years,

these sentences to run concurrently with the sentence in Indictment No. 61–551. The court also increased the sentence on the original charge (No. 61–551) to a term of ten years to life.

Defendant charges error in the trial of Indictment No. 61–551 in that (1) the court assumed the role of a prosecutor by extensively examining the witnesses, and (2) the prosecutor made statements in his closing argument which were not supported by the evidence and which were calculated to prejudice the jury. Defendant also contends that he was coerced into pleading guilty to the charges in the remaining three indictments because of remarks made by the judge at the time of sentencing on the first charge. His final contention is that the court improperly increased the sentence on the charge in No. 61–551 after he pleaded guilty to the other charges. Because no issue is raised concerning the defendant's guilt, it is not necessary to detail the facts, but we shall summarize them briefly.

On the night of January 12, 1961, the University Liquors at 1003 East 55th Street, Chicago, was robbed of $270 and a wristwatch was taken from the bartender, one Ben Krakover. Eight persons were arrested in connection with the crime, among them the defendant and one Barbara Carter. Krakover and Thomas Jordan, a student present at the time of the robbery, identified the defendant as one of three men who entered the tavern and took the money and watch. John Joyce, a detective of the Chi-

cago Police Department, testified that on the morning after the robbery he saw Barbara Carter wearing the watch at the police station.

With respect to the first charge of error relating to the court's conduct of the trial, the record reveals that the examination of witnesses by the attorneys was interrupted several times by inquiries from the bench, but it is also apparent that the court was merely seeking to clarify the testimony of particular witnesses and that he did so fairly and without prejudice to the defendant. We will not set forth each instance in which the court interjected his own questions into the proceeding, many of them being of a routine nature, but will analyze certain passages particularly relied upon by defendant as having "emphasized weaknesses in the defendant's case," and as having "indicated to [the jury] the Court's hostility towards the defendant. . . ." During the examination by the State of the prosecution witness Detective Joyce, Joyce testified that on the night of the robbery he was assigned to the investigation of another tavern robbery at 934 East 75th Street; that he did not see the defendant until the morning after the robbery, when he saw him at the police station. At that point the court interceded:

"THE COURT: As I understand it, officer, you did not arrest the defendant?

"THE WITNESS: That's right, Your Honor.

"THE COURT: You did not?

"THE WITNESS: Yes, I did not make the arrest.

"THE COURT: But you later saw him in the presence of Barbara Carter?

"THE WITNESS: Yes, sir.

"THE COURT: And Barbara Carter is the girl who was wearing this wristwatch?

"THE WITNESS: Yes, sir."

406

The defendant argues that the court's question with respect to Barbara Carter's possession of the wristwatch, alleged to have been taken from the bartender, unduly stressed that element of the prosecution's case. The questioning was understandable however because of the possibility of confusion arising from Joyce's testimony that he had investigated another robbery and had not participated in defendant's arrest. Moreover, despite the repetition of certain answers, it does not appear that particular emphasis was placed on any one portion of the testimony or that the judge revealed a bias as to the answers given.

Defendant also contends that the court indicated hostility toward him by interrupting an answer he was giving during the course of his own cross-examination.

| "THE COURT: | Well, did she tell the police, in your presence, that you had given her the wristwatch? |
| "THE WITNESS: | She most certainly did not; as a matter of fact, after Barbara Carter and I were arrested— |
| "THE COURT: | All right, you said no." |

It is evident that defendant had answered the question asked of him and had done so to his own advantage. It is not unreasonable to assume that the court's action prevented the defendant from incriminating himself.

■■ Defendant cites People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295; People v. Kelley, 29 Ill2d 53, 193 NE2d 21; People v. Tyner, 30 Ill2d 101, 104, 195 NE2d 675, and other cases for the proposition that the court may not exceed his role by becoming an advocate for one party or the other, but in each of those cases the court made direct comment on the credibility of witnesses or made attacks on counsel. In People v. Tyner, supra, the court went so far as to say that the witness "was lying like a

goat." On the other hand, it must be borne in mind that the judge does not play the part of an owl, merely gazing at the participants and looking wise. He must observe with care and seek to understand the issues and the testimony. If a question or an answer appears confusing, it is not only his right but his duty to seek to clarify it. Ultimately he may have to pass upon a motion for a new trial and his decision in turn may depend on the confusion or clarity with which questions are asked and answers given.

In the instant case the judge did not impugn the credibility of any witness. He acted as a conscientious and capable judge should and there was no error in his conduct of the trial.

■ Defendant's second contention is that the closing arguments of the prosecuting attorneys were improper because they attributed to defendant the statement, "Don't raise your head or I'll blow your head off." The State contends that this argument was permissible as an explanation of the prosecution witness' failure to remember details of the defendant's clothing, but this position is not sustained by an examination of the allegedly improper remarks which are set forth as follows:

> "They [the customers] were told to lie face down on the floor; while back there, this man told one of the witnesses, whom you heard testify yesterday. . . . 'Don't raise your head or I'll blow your head off.' That gives you the tenor in this type of case, 'Don't raise your head or I'll blow your head off.' "

Defendant concedes that there is evidence that someone made this threat, but he argues there is no evidence that it was he who did so. The record sustains his contention. The argument of the State's Attorney was therefore improper, but such error does not necessarily require reversal. People v. Lofton, 64 Ill App2d 238, 212 NE2d 705.

■■ Where the defendant's attorney does not object to the argument deemed improper, the court will not reverse unless it appears that he was deprived of his right to a fair trial. In the instant case defendant's attorney made no specific objection to the statements in question. The only objection we can find in the record following the argument referred to comes some time after it had been made and seems to relate to other matters. Defendant received a fair trial and his guilt was proved beyond reasonable doubt. The impropriety in the argument on behalf of the State does not constitute a basis for reversal.

■ Defendant's third contention is that he was coerced into pleading guilty on the remaining three indictments because the judge said at the time of sentencing on Indictment No. 61–551 that he "should have come in and pled guilty. This man is a professional robber. . . ." Evidence had been introduced of two convictions prior to the offense in question, and one of these was for robbery. The remark made was no more than a natural reaction under the circumstances. It is also clear from the record that the judge was solicitous of the defendant's rights and that defendant's plea of guilty was made with awareness of the consequences and without compulsion. There was no error with respect to this phase of the trial.

■ Defendant's final contention is that the court erred by increasing his sentence in Indictment No. 61–551 after the sentencing on the remaining three charges. The increase was from a term of ten to fifty years to a term of ten years to life. No prejudice can result to the defendant from this increased sentence. On the other two charges of armed robbery (Nos. 61–549 and 61–550) defendant was given terms of ten years to life, the sentences to run concurrently with the sentence in 61–551. The sentence in 61–551 was simply another concurrent sentence of ten years to life. Hence the defendant remains

eligible for parole after the expiration of ten years less time for good behavior.

The judgment is affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.