**People of the State of Illinois, Plaintiff-Appellee,
v. Alvin Hanserd, Defendant-Appellant.**

Gen. No. 68–176.

Second District.

July 31, 1970.

John T. Beynon, Public Defender of Winnebago County, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney of Winnebago County, of Rockford and K. Craig Peterson, Assistant State's Attorney, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

The defendant, Alvin Hanserd, was found guilty by a jury, of the crime of rape, and subsequently sentenced by the court to a term of not less than ten or more than twenty-five years in the penitentiary. He has appealed to this court, and contends that the State failed to prove beyond a reasonable doubt that the act of intercourse, which was admitted, was performed forcibly and against the will of the complaining witness, and that she resisted the act; that the court improperly instructed the jury; and that the court erred in imposing a sentence of from ten to twenty-five years in the penitentiary on the defendant.

At the trial, the complaining witness testified that on the evening of October 22, 1967, she had been baby-sitting at the Robert Peterson home, and left there about 2:40 a. m.; that she returned directly to her home, conversed briefly with a younger brother, and went to bed; that she was awakened at an unknown hour of the morning and found a man sitting on the side of her bed; that he put his hand over her mouth and told her nothing would happen to her brothers if she remained quiet; that she attempted to sit up, but was pushed down, and was again cautioned to be quiet; that the intruder then had intercourse with her, asked her name, and she replied that it was Linda—a name she had never used before; that he again cautioned her to be quiet; and that when she tried to get up and reach for the phone, he shoved it away.

The intruder then struck a match in the darkened room and wrote down the telephone number, which was an unpublished listing. He then asked if she needed any money and ran from the room.

The defendant's version of the incident is entirely different. He testified that he met the complaining wit-

467

ness about two weeks before this incident at a lunch counter in a downtown Rockford variety store, and that when she sat down next to him, she commenced a conversation with him and gave him her telephone number. He further testified that he saw her on the night in question, between 2:30 and 3:00 a. m., in front of the Greyhound bus station in Rockford; that she pulled her car over to the side of the street, rolled down the window, said hello to him, stated that she was the girl whom he met at the lunch counter, and told him where she lived; that she stated that she had two brothers at home sleeping; that he could come over to the house, gave him directions on how to enter the house and how to get to her bedroom; and that she then left.

The defendant also testified that earlier that evening he had been at a party in the neighborhood of the bus station; that he was on his way home when he met the complaining witness, and after talking with her, he went back to the party, stayed for a short time and then went to the home of the complaining witness; that he went up to her bedroom where they talked for some fifteen or twenty minutes, then he had intercourse with her, with her consent; and that at no time did he use force, or threaten to harm her brothers. He also stated that he remained in the room for five or ten minutes after having intercourse, and then left for the party on Jefferson Street, where he had been earlier that evening, but that he first stopped at a restaurant and called his wife; and that this was about 3:30 a. m.

■■■■■ By virtue of the conflicting testimony of the accused and the complaining witness, we are faced with the issue of credibility. The weight of evidence and its credibility are, in the first instance, questions for the jury. Upon review in criminal cases, if we find there is not adequate credible evidence, or if it is improbable, unsatisfactory or insufficient to remove all reasonable

doubt of the defendant's guilt and create an abiding belief that he is guilty, the conviction will be reversed. We cannot say here that the complaining witness' version of the incident is unbelievable, or is so incredible as to require a reversal. The People v. Wilson, 1 Ill2d 178, 187, 188, 115 NE2d 250 (1953); The People v. Potts, 403 Ill 398, 406, 86 NE2d 345 (1949). The mere conflict in the evidence is not sufficient to raise a reasonable doubt. The People v. Quevreaux, 407 Ill 176, 180, 95 NE2d 62 (1950); The People v. Davis, 10 Ill2d 430, 443, 140 NE2d 675 (1957). The overall gloss of the defendant's testimony could well have strained the credulity of the jury.

Furthermore, there is much evidence in the record which tends to corroborate the testimony of the complaining witness. The officers, who investigated in response to the telephone call which the complaining witness made at 5:12 a. m., testified that they found her in an agitated, emotional state. The physician, who examined her shortly after the police had removed her to a local hospital, testified that she was in a state of semishock and was unable to answer questions clearly without crying; that it was necessary to give her a tranquilizer; that a physical examination verified a recent act of sexual intercourse; and that she indicated to him that she had been raped.

The testimony regarding subsequent events also corroborated the complaining witness' testimony. Her mother testified that after October 22, the household began to receive telephone calls—most of which were in the early morning hours—and that the caller, if he asked for anyone, asked for "Linda"—the assumed name the complaining witness had used on the night of the incident in question. On November 18, the man who called asked whether he was talking with Linda, and identified himself as Bill Williams the man who had been at the house

469

of the complaining witness, and stated that he wanted to see her again. The mother of the complaining witness (who answered the phone) stated that it was Linda talking and, acting on police instructions, arranged a meeting.

■ Pursuant to this arrangement, the defendant met the complaining witness in the appointed parking lot of a grocery store, and he identified himself to her as the man who had been at her home. He was then apprehended by the police. One of the arresting officers testified that the complaining witness appeared to be hysterical at this time. This evidence sufficiently corroborated the complaining witness' version of the incident to sustain the conviction. The People v. Elder, 25 Ill2d 612, 614, 186 NE2d 27 (1962).

The court gave People's Instruction No. 15, which is as follows:

> "The court instructs the jury that it is not the law of this State that a woman assaulted with an intent to commit rape upon her is required to resist by all violent means within her power. The law requires only that she does not consent, and that she do all that her age, strength and the attendant circumstances make it reasonable for her to do in order to manifest her opposition. She is not required to resist beyond exhaustion of her strength or beyond the point where the force used against her would make further resistance useless or impossible. The question of resistance is a question for you to determine, and not a question the court can decide."

This trial took place prior to the mandatory use of IPI, Criminal Jury Instructions, and this particular instruction is not included therein.

■ The defendant contends that it fails to state that the want of consent by the complaining witness must be proven by the State beyond a reasonable doubt. However, in other instructions given in this case, the jury was correctly instructed relative to the elements of the crime of rape and that the burden of proof of those elements was on the State. The instructions as a whole, correctly stated the law of the case (The People v. Kolep, 29 Ill2d 116, 125, 193 NE2d 753 (1963)), and, therefore, People's Instruction No. 15 was properly given. (The People v. Smith, 32 Ill2d 88, 92, 203 NE2d 879 (1965); The People v. Rickey, 375 Ill 525, 532, 31 NE2d 973 (1941).) We find no ground for reversal in connection with instructing the jury.

■ The defendant's final contention is that the court erred in imposing upon him a sentence of from ten to twenty-five years. The power to reduce a sentence of the trial court pursuant to Supreme Court Rule 615(4) (Ill Rev Stats 1967, c 110A, par 615(b)(4)), places a grave responsibility upon a reviewing court. The trial judge, who sees and hears the witnesses, is in a far better position to appraise and evaluate the likelihood of the defendant's rehabilitation than is this court. The penalty decided upon by the trial court should not be reduced unless there are substantial reasons for doing so. We have no authority to exercise judicial clemency, and we should not alter a sentence because we would have imposed a different penalty had we been in the position of the trial court. People v. Valentine, 60 Ill App2d 339, 356, 208 NE2d 595 (1965).

■ The penalty prescribed for the crime of rape is an indeterminate term in the penitentiary with a minimum of not less than four years. (Ill Rev Stats 1967, c 38, par 11–1.) One convicted of rape may not be

471

admitted to probation. (Ill Rev Stats 1967, c 38, par 117–1.)

At the hearing on aggravation and mitigation, evidence of the defendant's two prior felony convictions was admitted. In 1948, at the age of 17, he was convicted of the offense of larceny. He was granted probation, which he violated by committing a burglary. His probation was revoked and he was sentenced from one to seven years in the State Penitentiary. In 1965, he was convicted in a Federal Court for the forgery of a government check. He was again granted probation.

There was also some favorable testimony as to the defendant's reputation and his work record, but this testimony appears to be hearsay and not based on the first-hand knowledge of the witnesses who testified.

 When a sentence is imposed within the limits prescribed by statute, an appellate court will not disturb that sentence unless it clearly appears that the penalty imposed constitutes a great departure from the fundamental law and its spirit and purpose, or that it is manifestly in excess of the proscription of section 11 of Article II of the Illinois Constitution requiring that all penalties be proportioned to the nature of the offense. People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673 (1965) ; People v. Smith, 14 Ill2d 95, 97, 150 NE 2d 815 (1958) ; People v. Juve, 106 Ill App2d 421, 428, 245 NE2d 293 (1969). Also see: People v. Scott, 117 Ill App2d 344, 253 NE2d 553 (1969).

 The imposition of sentence is peculiarly within the discretion of the trial court and this discretion should not be interfered with unless it is clearly abused. People v. Nordstrom, 73 Ill App2d 168, 183, 219 NE2d 151 (1966). In the light of the seriousness of this offense, we neither find an abuse of discretion by the trial court in this respect, nor that the sentence is manifestly excessive. The power in reviewing courts

to reduce sentences should be exercised with considerable caution. People v. Taylor, supra, 424.

Under the circumstances of this case, a reduction of sentence is not warranted, and the judgment is affirmed. People v. Taylor, supra, 424.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.