THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES CLYDE WOODELL, Defendant-Appellant.

(No. 70-191; )

Fifth District—August 18, 1971.

Paul Bradley, of Defender Project, of Mt. Vernon, (Donald E. Irvin, Assistant District Defender, of counsel,) for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This cause was a prosecution by indictment for the offense of burglary. The appellant, hereinafter referred to as the defendant, was tried on April 6, 1970 by jury which returned a verdict of guilty. From the judgment thereon the defendant has brought this appeal.

The burglary allegedly occurred on January 6, 1970, in Hamel, Illinois. The facts surrounding the arrest of the defendant are thus:

Madison County Deputy Sheriffs Greenwood and Robbs testified that they were patrolling service stations and business places in Hamel on the morning of January 6, 1970. At about 1:30 A.M., Greenwood saw a silhouette of a man in the west end of White's Marathon Service Station. The officers turned spotlights on the station and went to the front of the station. They then observed the front of a cigarette machine lying on the floor of the office part of the station. Next they parked the patrol car and checked the door on the east side of the building which was found to be unlocked. The officers then returned to the car and requested aid from the dispatcher and requested that the owner of the station be notified. The officers also observed parked in close proximity to the east door, a 1960 green Ford bearing California plates.

The service station faced in a north direction with the west end being the office section and the east area the service portion. The north side and east side were mostly plate glass.

After two additional patrol cars arrived to assist Deputies Greenwood and Robbs, five law enforcement personnel proceeded by flashlight to search the entire gas station premises. No one was found inside the building. A short time later the lessee of the station arrived and turned on the lights. Another search was then conducted by the lessee and two officers. Again no one was found. The lessee's watchdog was inside the station before and at the time the search was conducted.

After the other officers and the station lessee left, Greenwood and

Robbs proceeded to "stake out" the 1960 Ford. The deputies did this by moving their patrol car from its location about ten feet from the northeast side of the building to a point either 100 feet or 400 feet from the northwest corner of the station (Deputy Greenwood testified as to the 100 foot distance, whereas Deputy Robbs testified to a distance of 400 feet). From this vantage point Deputy Greenwood testified that he could see the entire north and west outsides of the station and by looking through the north side window of the station could see the entire east wall. From this position Deputy Greenwood said that he observed a man inside the station walk toward the east side of the building, open the door, and walk through the door to the outside. He had not been observed entering the station. The deputy described the lighting in the various areas from fairly good to poor but maintained "I got a clear view of it". Deputy Greenwood informed Deputy Robbs of his seeing the individual, and the spotlights and running lights of the patrol car were turned on and the car driven to the northeast corner of the station, and defendant "was standing outside the east side station door". The defendant was not observed to be carrying anything at the time of arrest.

Deputy Robbs' testimony was essentially that of Deputy Greenwood except for the discrepancy concerning the distance previously noted and Deputy Robb testified that he did not see the defendant until he was standing outside the station.

The station lessee and operator testified among other things that the defendant did not have authorization to be in the building; that the east door of the station was open with pry marks around the lock; the cash was missing from the soda machine; and a rack of STP was missing. He also testified as to performing a search of the premises with two deputies.

There was found in the back seat of the 1960 Ford Sedan and admitted into evidence, a display stand for STP and a coin box, which items had been observed by the officers through the window of the car prior to the "stake-out". There was also testimony that there was also in the back seat nine cans of STP, five cans of gas treatment, two boxes of shotgun shells, a tire and rim.

The defense produced testimony from one Herbert A. Pope who admitted performing the burglary but stated it was without the assistance of the defendant. Pope testified that he acted while the defendant was asleep in the back seat of the 1960 Ford, that the defendant at no time was inside the station, and that he (Pope) was inside the station when the officers first drove up and he "went back out through the door and out behind the service station". Pope was apprehended the morning of

the 6th when he returned to the station and made inquiry concerning his car. Pope pleaded guilty to this crime of burglary on the morning of this defendant's trial.

The defendant took the stand and testified in his own behalf, to the effect that he had been a resident of the State of Maryland, and that he was never inside the service station. He testified that he was enroute east with Pope from California; that, "I was asleep in the car until this rack of STP came flinging on top of me. By then I woke up. I am a parole violator from Maryland and this is why I don't want back into no more trouble. I got out of the car. I shot around side and watched the officers search the place. I came by the door and slipped on the ice and they shined the lights and asked me to proceed towards them and I did", and that he was then taken into custody.

The defendant first asserts that the State did not prove beyond a reasonable doubt that the defendant was guilty of the crime of burglary. The defendant contends that the State did not prove that the defendant first entered the service station and second, that even if he did enter, that he had the requisite intent to commit a theft.

■■ There was sufficient evidence to support the findings of the jury. The jury observed the witnesses and had that advantage in their deliberations to determine the innocence or guilt of the defendant. (*People v. Hanserd*, 125 Ill.App.2d 465, 216 N.E.2d 317.) In such situations as this, we are reluctant to overturn the factual determination made by the jury. (*People v. Sanders*, 129 Ill.App.2d 444, 253 N.E.2d 615.) The testimony of the Deputy Greenwood was subjected to thorough cross-examination and the credibility to be given to it was for the jury to decide. If they believed the Deputy and not the defendant that was their conclusion and we have gleaned from the record no compelling reason why their factual determination should be overturned.

■■ The defendant contends that the case of *People v. Cullotta*, 32 Ill.2d 502, 207 N.E.2d 444 is determinative of this issue. The *Cullotta* case involves the issue of identification. In that case the State could not prove that the defendant was in the building and his presence at the scene of the crime was more than an hour prior to the commission of the burglary. The facts of the *Cullotta* case are dissimilar to the present case, wherein there is testimony that an individual was seen inside the building and then apprehended immediately outside of the building. We agree that mere presence at the scene of a crime is insufficient to establish guilt but we find credible evidence of guilt in this case. (*People v. Boyd*, 17 Ill.2d 321, 161 N.E.2d 311.) However, the general rule is that testimony of a single witness if positive and credible is sufficient to

establish guilt, if believed by the jury. *People v. Schneekloth,* 129 Ill.App.2d 451, 263 N.E.2d 500.

 The defendant next asserts that the State's attempts to impeach the defense witness Herbert Pope were prejudicial to the defendant and deprived him of a fair trial, citing *People v. Nuccio,* 43 Ill.2d 375, 253 N.E.2d 353. We have reviewed the transcript of the trial and cannot say that the cross-examination conducted by the State's Attorney deprived the defendant of a fair trial. It is the totality of the impact of the unsupported insinuations which may deprive the defendant of a fair trial. In the course of the cross-examination of defendant's witness Pope, the following questions and answers were presented:

Q. O.K. Now, had you made any statements contrary to what you have just stated on the stand?

A. What?

Q. Did you give a statement when you got back to the service station to anybody? To a deputy sheriff that Woodell had your car and you had just met him in St. Louis?

A. No.

Q. You never ever said that?

A. No, Sir.

The prosecution then dropped that line of inquiry and failed to present any evidence to the effect that Pope had made any inconsistent statement with reference to this defendant having the car. There was never any motion to strike the testimony and we cannot say that defendant was prejudiced by it. The jury obviously did not believe defendant's witness Pope's testimony that defendant was never in the station and that defendant was asleep in Pope's car while Pope committed the burglary, so it would be of little consequence whether the jury believed that Pope had told some one that defendant had his car. The prosecution should not have suggested or inferred an inconsistent statement unless it was prepared to present evidence of it, but we cannot here say that the impropriety was prejudicial.

As a final assertion of error, the defendant contends that the giving of the following instruction denied the defendant of a fair trial: "Evidence of a defendant's previous conviction of a crime is to be considered by you only insofar as it may effect his credibility as a witness, and must not be considered by you as evidence of his guilt of the crime with which he is charged."

 The instruction is identical to IPI—Criminal Instruction 3.13. The committee note is that the instruction is to be given only when there has been impeachment of the defendant by proof of an infamous crime,

as defined in Ill. Rev. Stat. 1969, ch. 38, par. 124—1. The only proof of a crime came from the defendant's own testimony when he stated that he was "a parole violator from Maryland". The record is blank as to who tendered the instruction and the defendant voiced no objection to the giving of the instruction. Since defendant made no objection to the instruction, conceivably it could have been tendered by defendant to mitigate the effect of defendant's own voluntary testimony that he was a "parole violator", or if tendered by the prosecution, defendant's counsel considered that it would mitigate the effect of defendant's testimony. Supreme Court Rule 451(c) provides: "(c) Section 67 of the Civil Practice Act to govern. Instructions in criminal cases shall be tendered, settled, and given in accordance with Section 67 of the Civil Practice Act, but substantial defects are not waived by failure to make timely objections thereof if the interests of justice require."

The failure of the defendant to object to giving of instructions at the time of trial constitutes a waiver of that right to object on review. (*People v. Hines*, 30 Ill.2d 152, 195 N.E.2d 714; *People v. Hahn*, 114 Ill.App.2d 262, 252 N.E.2d 373.) This is not the case when the error is substantial and prejudice to the defendant is shown. (*People v. Wicks*, 115 Ill.App.2d 19, 252 N.E.2d 698.) This instruction is a limiting instruction the purpose of which is to inform the jury that conviction of a prior crime is not evidence in the case with which he is being tried. It limits the jury to consideration of prior crimes as such may affect the credibility of the defendant. The defendant himself informed the jury of a previous conviction and thus, it cannot be said that this limiting instruction deprived the defendant of a fair trial.

The judgment of the Circuit Court of Madison County is therefore affirmed.

Judgment affirmed.

CREBS and MORAN, JJ., concur.