THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MOSES CLAY, Defendant-Appellant.

(No. 53866; ▮▮▮▮▮▮)

First District—September 23, 1971.

738

Gerald W. Getty, Public Defender, of Chicago, (John T. Moran, Jr., Assistant Public Defender, of counsel,) for Moses Clay.

Edward V. Hanrahan, State's Attorney, of Chicago, (Martin Moltz, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Moses Clay, was convicted by a jury of rape and armed robbery. He was sentenced to serve twenty to thirty years for rape and three to six years for armed robbery, with the sentences to run

concurrently. He does not question the sufficiency of the evidence proving his guilt but he does contend that the jury's verdict was influenced by prejudicial trial errors.

Shortly before 10:00 P.M. on April 16, 1968, the complainant, who lived alone in her apartment, was working in the kitchen. She heard the outside screen door banging and a noise on the back stairs. She observed a figure coming down the steps but she could discern no more as there was no exterior lighting. She called out, but there was no response. After making sure the inside door was locked, she again heard the screen door bang softly. As she looked in the direction of the sound, the inside door was forced open "with one loud crack." The defendant, Moses Clay, stood in the doorway.

The complainant ran into her living room screaming for help. Clay followed her. She ran to the telephone and attempted to dial the operator. Clay grabbed the telephone and, as she tried to run by him to escape out the back door, seized her and struck her in the head and face four or five times. She could taste blood in her mouth, and she asked him to stop hitting her. He demanded money which she gave him. He then placed two kitchen cabinets in front of the kitchen door and ordered her to remove her clothes. She protested and he struck her repeatedly with his fist. As she still did not comply, Clay ran to the kitchen and returned with a knife, seized her, made stabbing gestures at her chest, and threatened to kill her. Thereupon, she removed her clothes and he had intercourse with her. Following this act, he took some change from her purse and an amethyst and pearl ring from the top of her dresser. After apologizing for hurting her and stating that he should tear the telephone out of the wall, he left the apartment.

The complainant immediately telephoned her mother, told her of the rape and asked her to come to her home. The police were summoned, and Clay's fingerprints were found upon one of the kitchen cabinets.

The defendant, who was permitted to cross-examine the complainant extensively, contends that the trial court erred in refusing to recall her to the stand for further cross-examination upon his counsel's representation that he had new information that she was an alcoholic and had been under psychiatric care. Although the court initially refused the request, the complainant was later summoned to the court's chambers and examined by the defendant's counsel, the assistant State's attorney and the court. While testifying in the courtroom she had been asked whether she drank any alcoholic beverage on the evening of the rape. She replied that she had not. In chambers she corrected this by stating that she used a little bit of wine, maybe half an ounce, in preparing her supper. She informed the court that she voluntarily attended a

psychiatric clinic, without being referred for treatment by her doctor, but that she had ceased doing so in January 1968. Under questioning by defense counsel she testified that she had had no psychiatric treatment and had not attended a class or clinic subsequent to April 16, 1968. The complainant identified the clinic she had attended, stated that she had never been treated for a mental disease or defect and had never been committed to a mental institution. She further asserted that she had never been an alcoholic and had undergone no treatment for alcoholism. The court stated that it was satisfied that she was not under psychiatric treatment at the time of the alleged offense and that she was not an alcoholic. The defense counsel, who had said he would make an offer of proof and would support his claims by credible evidence, thanked the court, made no offer of proof and the complainant was excused.

■■■ The latitude to be allowed in cross-examination of witnesses rests largely in the discretion of the trial court, and a reviewing court will interfere only where such discretion has been clearly abused. (*People v. Nugara* (1968), 39 Ill.2d 482, 236 N.E.2d 693; *People v. Halteman* (1956), 10 Ill.2d 74, 139 N.E.2d 286.) In the present case, the court made certain that the complainant had neither a drinking nor an emotional problem. After her testimony in chambers, the defense counsel did not offer to prove otherwise. Further inquiry in front of the jury concerning her past mental condition or supposed alcoholism would have served merely to humiliate the complainant or to implant suspicion about her in the jury's mind by insinuation. Questioning for this purpose has been disapproved by this court. (*People v. Haygood* (1965), 60 Ill.App.2d 70, 208 N.E.2d 373; *People v. Payton* (1967), 82 Ill.App.2d 51, 227 N.E.2d 87.) The court did not err in refusing to recall the witness for further cross-examination.

The defendant next asserts that he was substantially prejudiced when the court informed his counsel in front of the jury that the questions he was asking were confusing "the jury and the court and the witness." The court made this statement after the following series of questions had been asked:

"How much longer was that that he first * * * that he got the knife or rather your knife out of the kitchen, when was that? . . . Was that about one minute, two minutes, three minutes, four minutes, five, six or seven minutes that this occurred? * * * Which specific minute was it in time?"

■■■ The complainant stated she did not understand the questions and the court interpolated, "Neither does the court." The attorney then asked: "At the time that he first showed you the knife, this knife from the kitchen, approximately what time in length of time?" The court

remarked that the question was perplexing and should be rephrased. If a question or an answer appears confusing, it is the trial court's right and duty to make certain the matter is clarified. (*People v. Gaston* (1967), 85 Ill.App.2d 403, 299 N.E.2d 404.) The comments of the court were intended solely to make certain that the witness, the court, and the jury understood the nature of the question propounded. The comments were not prejudicial to the defendant. Also, the defendant was not prejudiced when, following his counsel's statement at the conclusion of the State's case that "the defense is calling no witnesses," the court remarked: "All right, let the record show that Mr. Smith, attorney for defendant, has no witnesses to call." The court's remark was little more than a repetition of the attorney's own words and indicated no bias against the defendant.

■■■ The defendant claims that inflammatory statements in the prosecutor's closing argument denied him a fair and impartial trial. He complains that the prosecutor characterized him as a rapist, an animal, a clown and a dummy. Much of this was in response to the defense attorney's argument that the defendant was only a burglar, a "cat-burglar," and that the rape was unpremeditated. The defendant also complains that the prosecutor stated that a rape of this kind—having taken place in the privacy of a home after a locked door had been kicked open—could have been committed upon any woman of the jury or upon the male jurors' wives and daughters. The defendant's attorney admitted in his closing argument that the complainant had been raped, and on appeal there is no quarrel with the identification of the defendant as the perpetrator of the crime. The undisputed evidence of the defendant's guilt minimizes the possibility that the prosecutor's characterizations of the defendant or his other remarks could have influenced the jury's verdict. Improper remarks do not constitute reversible error unless they result in substantial prejudice to the defendant. (*People v. Phillips* (1970), 126 Ill.App.2d 179, 261 N.E. 2d 469.) Furthermore, no objection was made to any of the remarks now asserted to be reversible error. An objection to an allegedly prejudicial argument will ordinarily not be considered on appeal unless it was first made at the trial. (*People v. Fort* (1970), 119 Ill.App.2d 350, 286 N.E.2d 63.) However, pursuant to Illinois Supreme Court Rule 615(a), "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." After examining the record and all the prosecutor's remarks in context, we conclude that most of them constituted legitimate rebuttal argument and none of them affected the defendant's substantial rights.

■■ On the other hand, we do not condone the prosecutor's remark

criticizing the defendant's attorney: "\* \* \* counsel uses the expression 'dummy' and that may be the only truthful thing that he said \* \* \*." Although the defendant's attorney referred to the State's case as "a big blow-up," the implication that he was deliberately attempting to deceive the jury by untruthful statements must be disapproved.

■■ During oral argument in this court the defendant was permitted to supplement his brief with the additional argument that the evidence was insufficient to prove him guilty of armed robbery. Although the defendant was unarmed when he burst into the complainant's apartment and when he took her money, he subsequently secured a knife, threatened her with it and, following the rape, stole her ring and some change from her purse. The fact that he did not have the knife in his hand when he took these objects does not alter the crime. The evidence was sufficient to sustain the conviction for armed robbery.

■■ Finally, the defendant urges this court to reduce the twenty to thirty year sentence he received for the rape. He was eighteen years old at the time of the offense and he asserts that because of his age and what he terms the spontaneous sexual passion which provoked the assault, the sentence is out of proportion to the crime and to sentences in similar cases. The rape was not promoted by a sudden surge of passion, and if it were it would not mitigate its gravity. The rape was deliberate. The defendant stayed outside the complainant's home until he was sure that she was alone. After breaking in he took her money. He then barricaded the kitchen door, beat her with his fists, prodded her with a knife and threatened her with death. The crime was brutal. The complainant was beaten when she tried to escape and when she resisted his advances; she was menaced with the knife when she refused to remove her clothing. When the assault ended she was bleeding from her mouth, nose and ear. In view of the serious nature of the crime and the savagery with which it was committed it would be inappropriate to modify the sentence imposed.

The judgment is affirmed.

Judgment affirmed.

McNAMARA, P. J., and McGLOON, J., concur.