The People of the State of Illinois, Plaintiff-Appellee, *v.* David L. Wright, Defendant-Appellant.

(No. 71-88;

Third District—June 19, 1972.

John L. Barton, of Defender Project, of Ottawa, for appellant.

Edward P. Drolet, State's Attorney, of Kankakee, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant David L. Wright pleaded guilty on November 5, 1970, to a burglary of a Montgomery Ward store committed on July 10, 1970. At a probation hearing in that case on November 23, 1970, defendant Wright was placed on probation for three years. Following normal procedure

the court retained jurisdiction until such time as defendant Wright successfully completed his term of probation. One condition of the probation was that defendant not violate any penal statute of the State of Illinois.

On March 12, 1971, there was a tavern burglary in Kankakee. The State petitioned to revoke defendant Wright's probation on the ground that he had violated penal statutes of the State of Illinois by participating in the tavern burglary. At the hearing on the petition to revoke Wright's probation, the Circuit Court of Kankakee County determined that "beyond a reasonable doubt" defendant Wright was guilty of the tavern burglary. As a result, the trial court revoked Wright's probation and sentenced him to a term of not less than three nor more than seven years for commission of the Montgomery Ward burglary.

On appeal from the court's revocation of his probation, defendant Wright contends that proof beyond a reasonable doubt is a proper standard to be applied in adjudicating a revocation of probation and that the proof in the hearing relating to his violation of probation failed to meet that standard. He also argues that his father-in-law, Willie Williams, and not defendant Wright committed the burglary. He likewise contends that even if the court properly revoked his probation, the sentence imposed should be reduced because it is disproportionate to his background and the nature of the Montgomery Ward burglary. The State, although pointing out that the evidence would be sufficient under any standard, contends that proof by "preponderance of the evidence" rather than "beyond a reasonable doubt" is all that is required in the probation revocation hearing.

■■ We conclude, however, that it is not necessary for us to determine the question of whether the applicable standard of proof should be beyond a reasonable doubt or the preponderance of the evidence in view of the action of the trial court and the record in this cause. The trial court, in the cause before us, found that defendant's commission of the tavern burglary had been proven beyond a reasonable doubt. We have examined the evidence in this cause and conclude that the trial court properly found that the evidence at the revocation hearing established defendant's violation of probation (involving the burglary at the tavern) beyond a reasonable doubt and that we would not be justified in setting aside such determination by the trial court.

We are particularly conscious of the fact that the trial court, as a trier of fact had an opportunity to hear the testimony and to observe the respective witnesses in determining credibility. The record indicates that the tavern owner, Robert Thompson, testified that on the night of the burglary defendant Wright and his father-in-law, Willie Williams, were in the tavern at approximately 1:00 A.M. When the tavern operator re-

turned to the tavern at approximately 3:00 A.M. he noted that a cigar box containing money and approximately 2 cases of half pints of alcoholic liquor and 2 cases of quarts and fifths of alcoholic liquor were missing. The back door to the tavern had been broken. Certain bottles were identified by Thompson in court as among those removed from the tavern through price markings that his sister placed on the bottles.

An employee of the tavern, David Terrell, testified that at approximately 2:00 A.M. on the night of the burglary he returned to the tavern for the purpose of cleaning up and placing beer in the cooler. As he approached the tavern he heard a noise at the back. He saw a black man of stocky build with quite a bit of hair. The man was wearing a black leather coat and was leaving the front of the tavern carrying a box of bottles to a car which was in the alley. The bottles were rattling against each other. The coat of defendant, which was identified in court, was a black leather coat with a light collar and was described by Terrell as being of the same type as worn by the person carrying the box. The rear of the tavern was illuminated. Tom Brooks had been at a restaurant four doors from the tavern when he was summoned by Terrell from the restaurant when Terrell told him that a burglary was taking place at the tavern. Brooks observed a man running from the area. He identified the man in court as defendant Wright. Brooks knew him and asked police not to shoot although one shot was fired at the time. Brooks chased defendant into an apartment building. The door to the apartment in the building was broken. Brooks, with two police officers, found defendant Wright in bed in that apartment. Brooks also identified the automobile which had been in the alley as one belonging to defendant's father-in-law, Willie Williams. On the basis of such identification, the police went to the father-in-law's house where they found the automobile.

In the automobile trunk, which was opened by Willie Williams, they found the intoxicating liquor which Robert Thompson identified in court. Defendant Wright's father-in-law, Willie Williams, testified that he had been with defendant Wright at the tavern on the night of the burglary. He stated that at approximately 2:00 A.M. he loaned his automobile to defendant Wright. At that time the automobile was parked in front of the tavern. He stated that later a woman returned the keys to him, Williams, at a restaurant near the tavern. He stated she told him that his automobile was behind the restaurant in the alley. Williams said he then went to the car and drove it home. When the police came shortly thereafter he opened the car trunk as requested by the police. Williams also identified Wright's coat as one belonging to defendant Wright. Williams was wearing a coat of the same type but it differed in that defendant Wright's coat had a light collar, which Williams' coat did not have.

One police officer testified that he pursued the fleeing man from the area of the tavern and identified the coat which was admitted to be that of defendant Wright as being a long black coat with a light collar similar to the coat which was worn by the man who was fleeing. The officer also testified that he found defendant in bed in an apartment. Defendant Wright told the police officer he had been sleeping a couple of hours. He admitted that the shoes under the bed were his. The shoes were wet from snow and numerous footprints led to the apartment. This same officer testified that he saw the fleeing man next to Williams car and he also noted another Negro in the driver's seat of the automobile at the same time. He stated that as he pursued defendant Wright, the Williams car pulled away. Another police officer corroborated this testimony.

The woman into whose apartment defendant Wright entered forcibly, by breaking the door, testified that defendant Wright came into her apartment and said that the police were chasing him. Defendant Wright testified in his own behalf that after leaving the restaurant he walked past Williams automobile which was parked in the alley. He said he happened to see the liquor in the automobile on the seat. He thought that something was happening and as an automobile approached him he thought he should not be present so he started to walk away and then ran. He also denied that Williams had given him the car keys. There was testimony by defendant Wright in court which differed significantly from a statement which he had given earlier which he admitted was incorrect in certain respects which it is not significant that we detail in this opinion.

While the evidence at the revocation hearing was chiefly circumstantial, it was not entirely so. Defendant's presence at the scene, his identification as having carried a case with rattling liquor bottles from the tavern to the automobile, his proximity to the automobile, his frenzied flight, his false account to the police of how he had arrived at the apartment and other discrepancies between the testimony and an earlier statement were factors which the court properly could consider.

■■■ Whether Willie Williams was a confederate in the perpetration of the burglary is not of significance in the determination of the issues in this case. A court of review should not substitute its determination of disputed factual matters for that made by the trial court. The trial court personally heard the evidence and noted the demeanor of the witnesses. While the evidence was conflicting, the trial court had determined the issues on the basis of the evidence produced. A simple denial by a defendant does not as a matter of law create a reasonable doubt of guilt. *People v. Pendleton*, 75 Ill.App.2d 314, 221 N.E.2d 112.

On the basis of the record, therefore, we do not believe we would be

justified in concluding that the trial court improperly found that defendant was guilty of the tavern burglary beyond a reasonable doubt.

■■■ As to the sentence imposed in this cause, we find that it was consistent with statutory provisions prescribing the sentence of an indeterminate term for the crime of burglary. (Illinois Revised Statutes, Ch. 38, sec. 19—1.) The trial court has a certain area of discretion in imposing such sentences. (*People v. Hanserd*, 125 Ill.App.2d 465, 261 N.E.2d 317.) The trial judge in the present case was the same judge who presided over the original proceedings as a result of which defendant Wright was granted probation. Under all the circumstances involved in this proceeding, and, even though defendant Wright had never been convicted of a crime prior to the Montgomery Ward burglary to which he pleaded guilty, we do not believe that this Court should act to set aside a 3 to 7 year sentence imposed by the trial court. The appellant's conviction, therefore, is affirmed.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.