THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALVIN GILL, Defendant-Appellant.

(No. 69-96;

Fifth District—August 11, 1972.

Thomas Meyer, of Belleville, for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

The defendant, Alvin J. Gill, was convicted of murder in violation of Ill. Rev. Stat 1963, Ch. 38, par. 9—1 on November 20, 1968, in the Circuit Court of St. Clair County. Trial was had to a jury and the defendant received a sentence in the Illinois State Penitentiary of not less than 50 years and not more than 70 years.

Mrs. Henrietta Coleman, a friend of the deceased, testified that around 8:00 P.M. on the evening of July 4, 1968, she observed the defendant and another man (identified by the defendant as one Robert Williams) approach the deceased. The three men stood in the street in front of her house in East St. Louis and talked. The defendant said that "Gramps" had slapped his sister and he was looking for him. The deceased stated: "You ought to come out of it, Jack." Mrs. Coleman testified that the defendant then pulled a pistol from his pocket, gritted his teeth and mortally shot Jasper Travis, the deceased. The defendant denied on the stand that he shot Travis and said that his friend, Robert Williams, shot him.

Officer Smith of the East St. Louis Police Department testified out

of the hearing of the jury that on July 14, 1968, at approximately 1:00 P.M. he and Officers Vancil, Trisse and White, went to the Orr-Weathers Homes where the defendant's wife lived, with a warrant for defendant's arrest. The officers were admitted by the caretaker using his pass key. Officers Smith, White and Vancil went to the bedroom where they found the defendant asleep on the bed. The officers awakened the defendant and he appeared to them to be coherent. Officer Smith then told the defendant "he didn't have to make a statement to us, if he did, anything he might say could be used against him in a court of law". The State's Attorney then asked Smith: "Did you tell him anything else in reference to his rights?" Smith replied: "That was about it; after I told him—". The State's Attorney interrupted Smith at that point in his reply and pursued a line of questioning concerning the defendant's understanding of his rights. Later, on direct examination, without objection of defense counsel, the State's Attorney asked Smith: "Did you indicate anything to the defendant with reference to his right to counsel or to a lawyer?" Smith replied, "Yes, Sir". The State's Attorney asked: "What was the gist of that?" Smith replied, "He understood and said that he didn't want to say anything more than what he told me." On cross-examination Smith testified: "Sure, I advised him he could get a lawyer." Smith also testified that no one else advised defendant of his rights at the time. Smith testified that thereafter he questioned the defendant about the incident and the defendant admitted shooting Travis with a gun and also that Robert Williams had taken the gun to Chicago.

Officer Vancil testified, also out of the presence of the jury, that Officer Smith told the defendant, with respect to his rights, that "he has the right to remain silent, to an attorney, to counsel, if he wants it, you know, and he asked him if he knows what we are here for * * * *". This testimony was given without objection of the defense counsel. The court then allowed Officers Smith and Vancil to testify about the confession in the presence of the jury.

The defendant had brought this appeal urging several bases for error which shall be considered in the order presented. The defendant asserts that he was denied the equal protection of the law and the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution by the incompetency of his trial counsel.

■■ The defendant chose as his privately retained counsel an attorney who had been in the practice of law in the area for approximately 10 years. Illinois has long recognized that the incompetence of trial counsel can be sufficient reason for reversing the judgment in a case.

(*People v. DeSimone*, 9 Ill.2d 522, 138 N.E.2d 556.) However, the standards of competence that are applied are controlled by *People v. Somerville*, 42 Ill.2d 1, 245 N.E.2d 461. For us to reverse on the basis of the dictates of the *Somerville* holding would require us to determine that the defendant's representation was of such low caliber to have been effectively no representation at all, or to have reduced the court proceedings to a farce or sham considering the record as a whole. The defendant has pointed out many instances wherein the defendant's trial counsel may well have made errors of tactics and judgment but we do not find that the defendant's representation was of such caliber as to afford relief under *People v. Somerville, supra*. (*People v. Dixon*, 2 Ill.App.3d 279, 276 N.E.2d 42; *People v. Heuton*, 2 Ill.App.3d 427, 276 N.E.2d 8.) Counsel attempted to defend against this murder charge, using the testimony of defendant, on a theory that another committed the crime, but if the jury believed eyewitness testimony that defendant committed the act it was committed in self defense. This defense was executed with an adroitness which belittles the contention of counsel's incompetence.

Next, the defendant claims the trial court committed reversible error when it permitted two police officers to testify that he told them he had shot the decedent, because they did not specifically inform him that prior to any questions he had the right to have an attorney present and if he could not afford an attorney, one would be appointed for him. *Miranda v. Arizona*, 384 U.S. 436, 86 Sup.Ct. 1602, 16 L.Ed.2d 694. ■■ In *People v. Braun*, 98 Ill.App.2d 5, 241 N.E.2d 25, the defendant was advised of his constitutional rights except that he "was not specifically informed that prior to any questioning he had the right to the presence of an attorney, and that if he could not afford an attorney, one would be appointed for him prior to any questioning, in accordance with *Miranda* * * * ". We must, therefore, conclude that there had not been sufficient compliance on behalf of the arresting officers. However, we must examine whether or not there has been a waiver of the constitutional rights. In *Braun* the testimony was admitted over the objection of counsel. In the instant case, there was no objection by the defendant's privately retained counsel. It may well be that defense counsel wished to waive the point to support a defense of self-defense. The officer testified that the defendant told him that he shot Travis. The defendant then testified later in the trial that "Robert shot him" and went on to say that "I told the police that I had done the shooting because Robert had saved my life". Thus we have not only the waiver by the counsel not objecting but also by the defendant himself voluntarily telling the jury that he told the police he shot him but trying to

convince the jury that some one else really did it for a definite and particular motive and reason. Under these circumstances the defendant must be considered to have waived the inadequacy of the *Miranda* warning.

■■ "It is settled law that when an accused is present in court and represented by competent counsel, he is bound by the actions and concessions of counsel, and that even constitutional rights may be waived in the course of a trial. [Cases cited.]" (*People v. Novotny,* 41 Ill.2d 401.) We hold that the defendant in this case has not only waived the *Miranda* rights by the actions of his counsel but also by his own acts. An examination of the record indicates that not only was the evidence of guilt overwhelming but also that the defendant was aware of his rights and elected to speak.

■■ The defendant urges that the defendant has been denied his right to a fair trial by the prejudicial opening statements of the prosecutor and by the trial court's conduct. A review of the record does not indicate that the defendant was denied the right to a fair trial. The cases that the defendant has cited are not determinative of the facts of this case. We agree that the State's Attorney is an officer of the court (*People v. Saylor,* 319 Ill. 205, 149 N.E. 767), who must not merely endeavor to obtain a conviction (*People v. Shoos,* 399 Ill. 527, 78 N.E.2d 245), but must refrain from saying or doing anything which might improperly affect or influence the jury. (*People v. Burnett,* 27 Ill.2d 510, 190 N.E.2d 338.) The defendant enumerates 20 occasions when he contended the State's Attorney made statements or asked questions which he contends were prejudicial. We do not find an obvious intent on the part of the State's Attorney to prejudice the right of the defendant. Many of the statements made and questions asked by the State's Attorney were made or asked without objection. We therefore limit our review to determine whether or not prejudicial error was committed of such nature as to deprive the defendant of a fair trial (*People v. Fort,* 14 Ill.2d 419, 153 N.E.2d 26; *People v. Moore,* 9 Ill.2d 224, 137 N.E.2d 246), and find none. The conduct of the trial court is also without prejudicial error. The defendant asserts that the court erred in interpreting the witness's testimony (*People v. Crawford,* 23 Ill.2d 625, 179 N.E.2d 667), and in conveying his opinions of the credibility of witnesses or the weight to be given their testimony by the jury. (*People v. Santucci,* 24 Ill.2d 93, 180 N.E.2d 491.) The court noted in the cross-examination of Mrs. Coleman "I think this witness has it pretty well straightened out; she has covered this several times" and while the defendant's wife was testifying that the defendant had been good to her in responding to a prosecution objection "We will let it go

in—this is the wife—for what it's worth". The comments of the court were not prejudicial to the defendant. *People v. Clay,* 1 Ill.App.3d 736, 274 N.E.2d 843.

 Next we consider the assertion of error that the trial court erred in failing to give an instruction to the jury on self-defense. The court had agreed to give the self-defense instruction; however, it was not prepared by counsel and for some reason was not given. Counsel for the defendant did not object to the failure to give the instruction. The error may have been waived because of the failure to object. (*People v. Woodell,* 1 Ill.App.3d 257, 274 N.E.2d 105.) However, substantial defects in instructions in criminal cases are not waived if the interest of justice is served. (Ill. Rev. Stat. 1968, ch. 110A, sec. 451(c); *People v. Knox,* 116 Ill.App.2d 427, 252 N.E.2d 549.) It is hard to imagine that with the defendant steadfastly denying that he shot the decedent that any reasonable jury could somehow infer that the decedent was killed by the defendant in self-defense. It is true as the defendant urges that inconsistent defenses may be asserted. (*People v. DeRosa,* 378 Ill. 557, 39 N.E.2d 1.) Having taken the witness stand and denying that he shot decedent, created an entirely different situation than was present in *DeRosa* where the two defenses were (1) that the killing was accidental, and (2) that it was done in self-defense. The defendant has the burden of proving that the failure to give the instruction was a substantial defect which resulted in the denial of justice. (*People v. Price,* 96 Ill.App.2d 86, 238 N.E.2d 881.) In view of the defendant's own testimony, the contended defect in failing to give the instruction is not of such magnitude as to have denied justice being done.

 The next contention made by the defendant is that the trial court erred in excluding the decedent's reputation for violence. The defendant claims that his case was prejudiced thereby, because although he denied shooting the deceased, that if the jury were to determine that he really did shoot him, it was in self-defense and thus the defendant should have been allowed to show the violent disposition of the deceased, citing *People v. Adams,* 25 Ill.2d 568, 185 N.E.2d 676. Under the circumstances here presented, the purpose for which the defendant desired to introduce evidence was not to substantiate his self-defense defense (which could at best be stated as a weak alternative defense) but, in fact, to gain sympathy from the jury because of the character of the decedent. Such evidence has no relationship to the guilt or innocence of the defendant and could under the facts of this case be introduced but for the sole purpose of gaining the sympathy of the jury for the defendant.

 The court did not have the court reporter transcribe and report proceedings that transpired at the Bench between the court and counsel

during the trial. The defendant urges that the failure to do so resulted in substantial error. Ill. Rev. Stat. 1967, ch. 37, sec. 655 and sec. 163f3 require reporting of the trial proceedings. The defendant has not cited any case authority for the assertion that the reporter must transcribe and report the proceedings that occur between the court and counsel at the Bench. Also, the defendant has failed to show in what particular way or manner this defendant has been prejudiced by the lack of such a report. We therefore do not find this to be error.

■■ The final contention is that the sentence is excessive. Defendant was a 24 year old father, who came from a cultural backwater. He had only a ninth grade education but had held down a steady job for more than seven years. There is uncontradicted testimony that he had been a good husband and father. He had no police record. Our Legislature had recognized a public policy of rehabilitation by providing eligibility for parole at 20 years despite the minimum sentence imposed in a murder case, in which the minimum provided by statute was 14 years. (Ill. Rev. Stat 1967, ch. 38, sec. 122—2 and 9—1.) Our Constitution of 1870 provided that the penalty should be proportioned to the nature of the offense. The sentence here imposed ignored the mandate of the Constitution and the public policy declared by our Legislature. Under the circumstances here present such policy is satisfied only by a reduction of sentence. See *People v. Pruitt*, 72 Ill.App.2d 419, 219 N.E.2d 705; *People v. Cooke*, 98 Ill.App.2d 376, 236 N.E.2d 97.

We therefore modify the sentence imposed by the trial court to provide a minimum sentence of 15 years with a maximum sentence of 45 years, and affirm the conviction with the sentence so modified.

Affirmed as modified.

G. MORAN and JONES, JJ., concur.