THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDMUND T. BAKER, Defendant-Appellant.

(No. 73-117; ▮▮▮▮▮▮▮▮▮

Third District—April 18, 1974.

James Geis, Deputy Defender, of Ottawa, for appellant.

Clarke Barnes, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from the Circuit Court of Rock Island County by defendant Edmund Baker from a conviction and sentence for the crime of rape. He was sentenced to a term of 20 to 60 years in the Illinois State Penitentiary.

On appeal in this Court, defendant raises three issues: (1) that it was reversible error for the State to have denied him a preliminary hearing; (2) that he was not proven guilty of the crime of rape beyond a reasonable doubt; and (3) that his sentence of 20 to 60 years is excessive.

The record on appeal which was initially filed had omitted a copy of the warrant for appellant's arrest and also a transcript of proceedings at appellant's preliminary hearing. The omission has been corrected and defendant's counsel indicated that the preliminary hearing issue was abandoned since there was in fact a preliminary hearing. Defendant was arrested on October 19, 1972, after he had voluntarily appeared at the Moline Police Station and given an inculpatory statement. A warrant charging him with rape was issued the next day, and on October 23, 1972, he was arraigned. A preliminary hearing was held on October 31, 1972.

On the issue of whether the guilt of defendant was proven beyond a reasonable doubt, a review of the evidence is required. The record discloses that the victim of the rape, on October 17, 1972, at approximately 9:15 P.M., was entering her Volkswagen van in the parking lot of a grocery market where she had been shopping, when a black man crowded in behind her and forced her inside and placed his arm around her neck. He ordered her to drive and directed where and how she was to drive. When they had finally stopped the vehicle at a place designated by the man who was in the back seat, he pulled the victim into the center seat, and, when she resisted his advances, he pushed her into the back seat. He removed her trousers and raped her twice. During the rape, the victim felt a heart-shaped medallion which was hanging around assailant's neck. The assailant, following the rape, told the prosecutrix that a gang was going to kill him. He gave her the knife which he had and said he would rather have her do the killing. She slipped the knife up her coat sleeve and, then following the directions of the assailant, drove him to a point at which he left the van. Two doctors examined the girl and confirmed the fact that she had been raped and other witnesses likewise confirmed that the prosecutrix was crying, her coat was torn, her eyes were glassy, her hair was in disarray, one shoe was missing, and that she was hysterical shortly after the event. No issue is raised as to the fact that the prosecutrix had been raped. The defense, rather,

sought to establish that defendant had not been the assailant who committed the rape.

A Mr. Meyers also testified that, at the approximate time when the prosecutrix had been accosted by the assailant as she was entering her Volkswagen in the market parking lot, Meyers saw a black man run to the van, climb into the van immediately behind the apparently-shocked female driver and put his arm around the driver's neck. He noticed that the man was wearing white shoes, which he believed could have been tennis shoes, and that the man had a hair style similar to defendant's. Mr. Meyers started his own car and tried to follow the van but eventually lost it when it went through a red light. He reported the van's license number and his observations to police. The police officer testified that he received the notification at 9:18 P.M. Later, as a result of a call to the station, he proceeded to the residence of the prosecutrix at 10:30 P.M.

A white woman, with whose family defendant had been staying for approximately 3 weeks since he had arrived in Rock Island, identified the knife given by the assailant to the prosecutrix as being the same pattern as knives in her silverware drawer. A medallion of the same size and shape as described by the prosecutrix was found among defendant's belongings at the residence following defendant's arrest.

On the day following the assault, the victim and her mother found a billfold between the seats in the van in which the victim had been raped. It was defendant's wallet. The prosecutrix identified a picture contained in the wallet as that of her assailant. It was in fact a picture of defendant. Upon viewing a line-up 2 days later, however, the prosecutrix was unable to identify with certainty the defendant but stated that the defendant and another person were so similar in appearance that she could not specifically identify the defendant at such time. The prosecutrix testified in court that there was nothing about the appearance of defendant in the line-up which would cause her to believe he was not the assailant. When she viewed the defendant in court she said that his eyes and eye brows appeared much the same as those she saw in the rear view mirror of the van on October 17.

The woman at whose home defendant was staying, stated that she saw defendant leave her home at approximately 9:30 P.M. on October 17 and that he returned at approximately 10:30 P.M., give or take 15 minutes. She recalled that on that evening, he was wearing white tennis shoes, a waist-length black jacket, dark T-shirt and a pair of Levis. Prosecutrix described her assailant as being dressed in the manner so described.

In the statement made to the Moline Police on October 19, defendant said he forced his way into a Volkswagen van; that he had a gun and believed the driver knew it; and that he forced the driver to drive and stop in an alley where he raped the driver in the back seat. He described the victim's clothing as being a gray jacket and gray bell-bottoms. Defendant thereafter told the police officer to whom he gave the statement that he was a member of a gang and he was taking the blame for the chief of the gang and that he had given his wallet to a friend on the night of October 17 and that the friend had lost it.

Baker testified at the trial that he was a member of a gang and that the heart-shaped medallion was an insignia worn by the members. He stated that one Cole Williams, a gang member, was the chief and was approximately of his stature and had a moustache and goatee similar to his. Defendant stated that he had trouble with the gang because he was living with white persons and associating with white people. He stated that on Sunday before the rape, Williams took him to a vacant apartment where about 14 gang members were present and that defendant was attacked and beaten and his billfold containing $18 was taken from him by Williams, and was told that he would be set up for a crime. He also stated that he saw Williams on the night of October 17 and that Williams was dressed in white boots, bell-bottoms and a black silk jacket. He said Williams carried a knife and a gun. He also stated that on October 17, he and Williams fought some hippies behind the tavern where they had gone to buy some gin, and that Williams stabbed one of the hippies. He further stated that before he was arrested he had told a Patty Shaw that Williams had committed the rape for which defendant was being blamed. In attempting to explain a source of funds with which, despite the theft of his billfold and money, he was able to allegedly purchase the gin on October 17, 1972, he said his mother, his sister, and a boy named Murphy, and various girlfriends gave him money when he requested it. He stated that because she loved him, one girl gave him all the money he wanted but he could not recall the names of any of the girls.

The defense called Patty Shaw as a witness to substantiate his testimony that he had been beaten. She stated that one of his eyes was swollen and the white of the eye was bloodshot, but that on October 19, 1972, it had subsided but was still noticeable. A photograph of defendant taken in the lineup on October 20 did not disclose any discoloration or puffiness. No mention was made of any discoloration or puffiness by the prosecutrix.

A black police officer for the city of Rock Island who testified for the prosecution in rebuttal said he had been a Rock Island police officer for

more than 10 years and a resident of the city of 37 years. He stated that never during that time had he heard of the alleged gang described by defendant or known of a faction of it in the area.

■■■ Courts of review have noted that the issue of fact in a rape case may be determined by a jury as the finder of fact, and that the jury is entitled to believe or disbelieve the evidence which is presented, so long as the evidence does not, as a matter of law, raise a reasonable doubt as to guilt. (*People v. Porter*, 13 Ill.App.3d 893, 300 N.E.2d 814; *People v. Hoffman*, 45 Ill.2d 221, 258 N.E.2d 326, *cert. denied*, 400 U.S. 904, 27 L.Ed.2d 141, 91 S.Ct. 142.) It is clear from the record in this case that the evidence was sufficient, as a matter of law, to sustain the verdict of the jury. The jury obviously did not believe the testimony of defendant. There was much independent corroborative evidence of record including: defendant's initial inculpatory statement followed by the testimony of witness Meyers describing defendant's clothing as the type worn by the assailant; the assailant's knife matching the description of the silverware in the home where defendant was staying; the heart-shaped medallion worn by defendant found among his belongings; and, finally, defendant's billfold containing defendant's photograph found in the Volkswagen van following rape which presumably had been dislodged from defendant's pocket when he was in the van. It is apparent that the determination of the jury that defendant was guilty beyond a reasonable doubt is supported by the record in this cause.

On the issue raised as to the sentence which was imposed on defendant, we note that the crime of rape was classified as a Class 1 Felony by the Illinois Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—1). The penalty for rape is any maximum in excess of 4 years, and the minimum is fixed at 4 years "unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant, sets a higher minimum term." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1.) Obviously, the court was considering the defendant's history and character and the circumstances of the offense, as well as the protection of the public, when it imposed the 20-year minimum sentence.

■■ It was noted by the court that the defendant had been released from a prior incarceration in prison which defendant had been serving as punishment for statutory rape. Two weeks thereafter, he participated in a forcible rape with six other boys in Chicago. He had then been sentenced for such rape to a term of 3 to 10 years. Defendant had been released from the latter imprisonment only 3 weeks before he committed the offense which is the subject of the present appeal. In imposing its sentence, the trial court noted that, although the minimum term was 20 years, the defendant first would become eligible for parole after

serving 11 years and 3 months. In view of the record in this cause, and defendant's record, we do not believe that we should interfere with the determination of the trial court in assessing the penalty and fixing the term of imprisonment. *People v. Hanserd*, 125 Ill.App.2d 465, 261 N.E.2d 317.

For the reasons stated, and since we find no reversible error in the record, the judgment and sentence of the Circuit Court of Rock Island County is affirmed.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.