People of the State of Illinois, Plaintiff-Appellee, v. Sam Hill, Defendant-Appellant.

Gen. No. 53,183.

First District, First Division.

October 27, 1969.

Rehearing denied November 21, 1969.

W. John Swartz, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Kenneth L. Gillis, Special Assistant State's Attorney, and Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Sam Hill, was indicted on the charge of murder. After pleading not guilty the defendant waived a jury trial. He was found guilty and sentenced to serve fifteen to twenty-five years in the penitentiary.

The defendant contends on appeal that (1) the State has failed to carry its burden of proving the defendant was not acting in self-defense or (2) in the alternative, the record could only support a voluntary manslaughter conviction.

The deceased, Hosey Reynolds, also known as Hosey Wilson, and the defendant, were employed at the Electro-Motive plant in McCook, Illinois. The deceased was a welder and defendant was an inspector. Some time between 9:30 and 10:30 p. m. on September 14, 1966, there was an argument between the defendant and the deceased about the quality of a piece of the deceased's work. The deceased threw the defendant to the floor and the fight was stopped by other employees. The deceased had obtained five dollars from the defendant as part of a bet, before the fight, and refused to return it.

George Jefferson, a fellow employee, testified that before the defendant left the plant he said, "Hosey has to fight me for the five, or I'm going to kill him."

The defendant left the plant immediately after the fight and went to the union hall until he felt better. He testified that he returned to the plant at the end of the shift to pick up Clara Jackson, who rode to and from work with him. When he got to the plant, about 1:30 a. m. of September 15, 1966, he took a pistol from the glove compartment and placed it in his belt. He said he then went to the plant exit ramps to wait for his rider.

According to the defendant, his rider and the deceased came out about the same time. He approached the deceased and asked for the return of his five dollars. The deceased continued to refuse. The defendant testified that the deceased then came at him with a knife, swearing at him, and threatening him. Defendant says that he retreated, pulled his pistol, fired first at the ground, and then just kept firing until the deceased fell. He denies firing at the deceased after the deceased fell to the ground. He then walked to the guardhouse, laid his pistol down, and waited for the police. Defendant testified that at the time he pulled his pistol he was scared and had no other chance to avoid great bodily harm or death.

The other witness for the defense, Elvester James, somewhat corroborated defendant's testimony. He said he was in the parking lot and saw the defendant being approached by a man with something shiny in his hands. He saw defendant back away and then fire. Someone fell. However, James said defendant fired five or six shots and all but the first two were fired after the deceased fell.

Elrod Collins, who was in the parking lot only a few feet away from the shooting, testified that he heard

shots and turned to see the deceased fall. He then saw the defendant stand over the deceased and shoot him twice in the head. Collins said that he couldn't say if the deceased had anything in his hands.

Anthony Zanoska was trying to leave the plant for the parking lot when he found the exit aisle blocked by the defendant and the deceased. Zanoska went back up the ramp and detoured to another exit aisle. He had had time to walk 35–40 feet from the two men when he heard four shots. He turned to see the defendant fire two more shots at something on the ground.

Ledger Ferguson said that he passed the defendant on the ramp, but didn't see what transpired before the shooting. He was 30–40 feet away when he heard a shot and turned to see the deceased fall. Then there were two more shots. After the deceased fell, Ferguson saw his hands and didn't see anything in them. He also testified that the deceased was already on the ground when he first saw him after he heard the first shot.

Johnny Cross testified that he was in the parking lot, but didn't see the two men until some shots had been fired. He then saw the deceased falling and at that time saw nothing in his hands.

██ ██ It is the principal contention of the defendant that the State introduced no evidence to rebut the defendant's corroborated testimony that he fired on the deceased only after the deceased attacked him with a knife. The defendant claims that the State therefore failed to carry its burden of proof required by statute. We do not agree. There was evidence contradicting defendant's claim of self-defense. The burden of proving circumstances justifying or excusing homicide devolves upon the accused where he admits firing the fatal shot, and it is the province of the trier of fact to determine whether justification or excuse in fact existed. People v. Slaughter, 29 Ill2d 384, 391, 194 NE2d 193, 196.

160

In Slaughter, the defendant had shot his wife to death. He claimed that the shotgun had fired accidentally when he returned to the bedroom after an unsuccessful search for a prowler. But the defendant had told three separate explanations of the shooting, and his 11-year-old nephew had told of a fight between defendant and his wife during which defendant had threatened her earlier in the month in which she was killed. The issue depended upon defendant's credibility. His conflicting versions of the occurrence rendered his testimony unworthy of belief.

In the instant case the actions of the defendant made his claim of self-defense unworthy of belief. The shooting did not occur during the fight between the deceased and the defendant in the plant. The defendant left the plant and then returned at the time the deceased would be going home from work. Before talking to the deceased, he armed himself with a pistol. Although the defendant asserted that he backed away from the deceased who had a knife in his hand and then shot in self-defense, several witnesses testified that when the deceased fell he had nothing in his hands. No knife was ever found. There was testimony that after the deceased fell the defendant stood over him and shot him two more times in the head.

There is no dispute that the law allows a person to use deadly force in defense of himself after being assaulted in a manner which would make him reasonably apprehensive of death or great bodily harm. Ill Rev Stats 1965, c 38, § 7–1. In the cases cited by the defendant the deceased were clearly the aggressors. We believe that the evidence was sufficient to justify the trial court's determination that the defendant was the aggressor and did not kill in self-defense.

The defendant also contends that the record would support only a voluntary manslaughter conviction. In the cases cited by the defendant the record showed sufficient

provocation to support a finding of voluntary manslaughter under Ill Rev Stats 1965, c 38, § 9–2. In this case we find no provocation which would have required a verdict of manslaughter even if the issue had been raised by the defendant at the trial or in a written motion for a new trial, neither of which was done.

It is our conclusion that the evidence was sufficient to sustain the conviction for murder, and the judgment of the Circuit Court is therefore affirmed.

Judgment affirmed.

ADESKO, P. J. and MURPHY, J., concur.