THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GUSSIE MAE WHITE, Defendant-Appellant.

(No. 71-86; ▮▮▮▮▮▮▮▮)

Third District—November 29, 1972.

*Rehearing denied December 22, 1972.*

John L. Barton, of Defender Project, of Ottawa, for appellant.

F. Stewart Merdian, Assistant State's Attorney, of Rock Island, for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

In a prosecution of an indictment for Murder in the Circuit Court of Rock Island County, the jury returned a verdict of guilty of Voluntary Manslaughter. The trial court charged the jury that it could find the defendant guilty of murder, voluntary manslaughter, or involuntary manslaughter. Following conviction, the court sentenced defendant to imprisonment in the penitentiary for not less than one nor more than 20 years. On appeal in this court, defendant asks reversal on the grounds, (1) that defendant was not proven guilty of voluntary manslaughter, and (2) that the maximum sentence of 20 years was excessive in view of the circumstances of the offense and the background of defendant.

From the record it appears that on October 31, 1970, defendant was involved in a fight with a woman in a crowded tavern. The manager stopped the fight and escorted the defendant outside. The manager then returned to the tavern to obtain defendant's coat. The sister of the girl with whom defendant had been fighting came to the door of the tavern. Defendant, who was standing outside, threatened to shoot the sister. Just as defendant fired her gun, a friend of the sister pushed the sister

from the line of fire. The bullet struck and killed Perkins Rolax, Jr. Rolax was a stranger who had been standing at the bar.

Defendant and her sister testified at the trial that the sister of the girl with whom defendant had been fighting came to the door of the tavern and brandished a knife. Following the shooting, defendant fled, but, on counsel's advice, later surrendered herself and her gun to police. Defendant contended that the shooting occurred in self-defense.

In the statute (Ill. Rev. Stat. 1969, ch. 38, sec. 9—2), the crime of voluntary manslaughter is defined as follows:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
> 
> (1) The individual killed, or
> 
> (2) Another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed.
> 
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
> 
> (b) A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable."

It appears that during the jury instruction conference with the court, counsel for the People and counsel for defendant, it was agreed that the shooting was not the result of a "sudden and intense passion resulting from serious provocation." The court accordingly did not instruct the jury with respect to subparagraph (a) of section 9—2 herein referred to but it instructed the jury as follows with respect to subparagraph (b):

> "A person commits the crime of voluntary manslaughter who intentionally or knowingly kills another if, at the time of the killing, he believes that circumstances exist which would justify the killing, but his belief that such circumstances exist is unreasonable.
> 
> \* \* \*
> 
> To sustain the charge of voluntary manslaughter, the State must prove the following propositions:
> 
> That the defendant performed the acts which caused the death of Perkins Rolax, Jr.;
> 
> That when the defendant did so, she intended to kill or do great bodily harm to another, or she knew that her acts would cause death or great bodily harm to another, or she knew that her acts

created a strong probability of death or great bodily harm to another;

That the defendant was not justified in using the force which she used;

That the defendant did not believe that circumstances existed which justified the use of force which she used;

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

These instructions were substantially modeled upon Pattern Instructions 7.03 to 7.06 in the Illinois Pattern Jury Instructions relating to criminal cases.

Since there was no instruction on section 9—2(a) relating to a "sudden and intense passion," it is apparent that the evidence was insufficient to establish voluntary manslaughter under such section, and, accordingly, the issue for determination is whether defendant could have been convicted under section 9—2(b). The defendant asserts, based on the jury verdict, that the jury concluded that at the time of the shooting the defendant believed that the killing of the sister of the girl with whom defendant had been fighting was legally justified but that such belief was unreasonable. Defendant, therefore, asserts, since the sister of the person at whom the defendant was aiming was not the person who was killed by defendant, that a requisite element of voluntary manslaughter under section 9—2(b) was missing. She contends that since defendant was not shown to have harbored the requisite state of mind with respect to the specific person who was in fact killed, defendant could not be convicted for killing that stranger, since she had no intent to kill or injure with respect to him.

The argument of defendant is framed upon the language of section 9—2(b) and upon the language of the statute which defines murder, (Ill. Rev. Stat. 1969, ch. 38, sec. 9—1), as well as upon the language of the voluntary manslaughter statute with respect to acts occurring under a sudden and intense passion (section 9—2(a) hereinabove referred to). Defendant also refers to the Illinois Pattern Jury Instructions with respect to section 9—2(b). Illinois Pattern Jury Instruction 7.06.

Defendant argues that section 9—2(b) refers explicitly to "circumstances * * * that, if they existed, would justify or exonerate *the* killing," (emphasis added), and that the word "the" should be so con-

strued as to limit the crime to actual killing of the "individual" with respect to whom the killer harbored the requisite belief or intent. Defendant compares "individual" as used in section 9—2(b) with the word "another" as used in section 9—2(a)(2), and contends that while section 9—2(a) clearly contemplates the death of an unintended victim, section 9—2(b) limits the defined crime to the killing of the person with respect to whom the requisite state of mind existed. Defendant also argues that the Illinois Pattern Jury Instructions are consistent with this assertion since I.P.I. 7.03 which defines voluntary manslaughter under sudden and intense passion, which follows the statute, expressly indicates that the crime can be committed when the person killed is other than the intended victim. I.P.I. 7.05 which defines voluntary manslaughter under the unreasonable belief that the killing was justified, defendant contends, is not modifiable to cause it to apply when the person killed is other than the intended victim. Defendant also argues that the statute which defines murder, section 9—1 of chapter 38, provides expressly that the offense there defined can be committed when a person other than the intended victim is killed. It is argued, that since the legislature easily could have provided similarly in section 9—2(b) but omitted to do so, that the legislature must have intended that voluntary manslaughter would not occur under section 9—2(b) when a person other than the intended victim was killed.

Defendant, in essence, contends that no "transferred intent" would be applicable in the instant case and, therefore, that the killing of the victim Rolax was not punishable as voluntary manslaughter, even though a jury might properly have found defendant guilty of murder. The State replies to this contention by pointing out that where murder is charged, the crime of voluntary manslaughter, being a lesser included offense, could be found by a jury, under appropriate circumstances such as under the facts in the instant case. (*People v. Gajda*, 87 Ill.App.2d 316.) The State also points out that the doctrine of transferred intent in criminal cases has been established for hundreds of years by the only English case of *Reg. v. Saunders*, 2 Plowd. 473, 75 Eng. Reprint 706(1576), 18 A.L.R. 923, in which the court pointed out that if a man maliciously shoots an arrow at another with intent to kill him and a person to whom he bore no malice is killed by it, this would be murder for the person who shot the arrow with intent to kill, and is the same offense as to such person as if he had killed the person he aimed at. The State also points out that the defendant in the instant case had sought to establish self defense in the trial, which raised a question of fact for the jury and which the jury chose not to accept. (*People v. Adams*, 113 Ill.App.2d 205.) Defendant was found guilty of voluntary manslaughter without specifying whether the

killing was a result of a "sudden or intense passion" or an "unreasonable belief" in self defense. The State contends that there is sufficient evidence to justify the conviction under either paragraph. *People v. Hill*, 116 Ill.App.2d 157.

■■ We do not believe that there was a deliberate legislative omission of the principle of so-called "transferred intent" in section 9—2(b) but, in fact, the language of the act should be construed so that a killing of a stranger by a person who kills, actually intending to kill another person, could in fact constitute voluntary manslaughter under the Illinois Act.

Defendant's argument seeks to analyze the language of section 9—2(b) upon the basis of the conclusion that the words *"the killing"* (emphasis added), must refer solely to the killing of the person who provoked the defendant. These words, however, are contained in the clause which reads "if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code * * *." It is, therefore, the principles stated in Article 7 of the Code which determine whether "the killing" would be justified or exonerated, if the killer's belief were reasonable. Thus on the basis of these principles, if the killing of Perkins Rolax, Jr., a stranger to the quarrel in which defendant was involved, could be justified or exonerated, "under the principles stated in Article 7 of the Code," *i.e.*, if the belief of the killer was reasonable, then "the killing" of an unintended victim would not constitute the crime of voluntary manslaughter under section 9—2(b). It is, therefore, apparent, in reasonable construction of section 9—2(b), that this section refers to the killing of any person whose killing would be justified or exonerated under the principles stated in Article 7 if the killer's belief were reasonable.

■■ According to Article 7, the killing of an unintended victim could be justified or exonerated under the same principles as "the killing" of an intended victim. We, therefore, conclude that defendant was properly convicted of voluntary manslaughter even though she missed her intended victim and killed a stranger instead. That killing could have been justified under Ill. Rev. Stat., ch. 38, sec. 7—1, if the jury had believed that defendant possessed the required reasonable belief. We note the language in that section as follows:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary

to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony."

Defendant's use of force, within the meaning of section 7—1, was clearly directed "against" the sister of the girl with whom defendant had been fighting and defendant attempted to justify such use of force by showing that she reasonably believed that such conduct was necessary to defend herself against the sister's "imminent use of unlawful force" against her. Although the use of force was directed "against" the sister, its victim, in fact, was Rolax. If she had a reasonable belief, then the use of that force could have been justified. See: *Pinder v. State*, 27 Fla. 370, 8 So. 837.

The construction of section 9—2(b) which we have outlined based on the principles of section 7—1 of chapter 38, Ill. Rev. Stat., likewise possesses additional advantages over the construction for which defendant contends. It makes section 9—2(b) consistent with section 9—2(a) relating to voluntary manslaughter as well as with the section relating to murder. The words "the killing" obviously refer to the type of killing referred to in section 9—2(a), that is, of either the provoker or the unintended victim. The construction which we have outlined also makes good sense as a matter of public policy. Defendant has not suggested any reason why, as a matter of public policy, a person who possesses a particular state of mind and undertakes such acts as would constitute an unlawful killing (if the intended victim were killed), should not be considered to have committed the same crime simply because she missed the intended victim and killed another. As defendant herself has indicated, neither the statutory definition of murder nor the statutory definition of voluntary manslaughter, committed under a sudden and intense passion, contained any such illogical distinction. Nor, do we believe, does the statutory definition of voluntary manslaughter under section 9—2(b). We, therefore, conclude that the conviction of defendant of voluntary manslaughter was proper and should be approved.

■■ The only remaining issue is whether the sentence of one to 20 years is excessive or improper in the imposition of the 20 year maximum. We have repeatedly indicated that a court of review should undertake modification of sentences which are within the scope authorized by statute with great caution and only in cases which require action by a court of review. We must keep in mind that the trial court is normally in a superior position to assess the nature of the crime and the character of the defendant and to determine questions relating to sentencing. Under circumstances such as we find in this case, a reviewing court must accord to the trial court a considerable discretion with respect to the

sentence which was imposed. *People v. Hanserd*, 125 Ill.App.2d 465, 261 N.E.2d 317.

 The sentence imposed by the trial court was specifically the sentence provided for voluntary manslaughter with imprisonment in the penitentiary of from one to 20 years. (Ill. Rev. Stat., ch. 38, sec. 9—2(c).) The sentence is consistent with the admonition in Ill. Rev. Stat., ch. 38, sec. 1—7(e), that all sentences to the penitentiary shall be for an indeterminate term and the minimum shall not be less nor the maximum more than the minimum and maximum provided for by law for the offense. While we recognize that the defendant had seven children with whom she was living and was said by her employer, minister, social worker, and friends and relatives, to be a good mother and to have a good reputation for peacefulness, and while we might have fixed a lower maximum had we been sitting in the trial court, the nature of the crime and the circumstance that the trial court was in better position to determine the sentence which should be imposed in this case, persuades us that this is a case in which a court of review should not act to alter the sentence. The judgment of the circuit court of Rock Island County will, therefore, be affirmed.

Judgment affirmed.

STOUDER, P. J., and DIXON, J., concur.