THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARSIE FRAZIER, Defendant-Appellant.

First District (5th Division)   No. 76-1033

Opinion filed September 30, 1977.—Rehearing denied November 17, 1977.

Howard T. Savage and Patricia Unsinn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, and Larry L. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

After a bench trial defendant was convicted of aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4) and sentenced to a term of 2 to 6 years. On appeal he presents the following issues for review: (1) whether his guilt was established beyond a reasonable doubt; and (2) whether the sentence of 2 to 6 years was excessive.

We affirm.

The pertinent facts follow:

Leon Woods testified that on January 18, 1975, at about 10 a.m., he was in a tavern in which there were 6 to 8 people seated along the bar. He bought one beer upon arriving and stood by himself, facing away from the bar. Defendant and Clephus Whitledge were seated at the bar a couple of stools apart. Woods ordered another drink and was getting his change from the bartender when something struck him from the side and he heard a gunshot. He looked around to see what hit him. He saw defendant and Whitledge standing at an angle, away from him. Whitledge staggered toward the stools and then fell on the floor with blood coming from his nose. Defendant put what appeared to be a gun down his pants. The gun appeared to be black in color but everything happened so fast he was not sure. Woods told the manager of the bar to call the police and have someone take him to the hospital because he had been shot.

On cross-examination, Woods stated that he was not looking directly at defendant at the time of the shooting. He heard the shot a few moments or a few seconds after he was struck. Woods testified he heard only one shot. Several days later, while he was in intensive care, Woods identified a photo of defendant. The officer let him look at the photo without saying anything. He identified it, and to the best of his knowledge only one photo was shown to him.

Clephus Whitledge testified he was in the tavern on January 18, 1975, at around 10 a.m. Defendant walked in and sat down on the stool next to him. When defendant leaned on him, he told defendant not to do it. Whitledge played some records on the jukebox and returned to the same seat. Defendant leaned on him once more, and once more Whitledge told him not to do so. He did not raise his voice to defendant and testified he had no weapon on his person. He saw defendant pull back his arm to strike him, but he did not see the blow come toward him, and he did not know what he had been hit with. He remembered nothing more. About

three days later, the police came by his home and showed him four or five pictures, but he was not able to identify anyone. He stated that at the time he viewed the photos, he could not see well because one eye was bandaged. At trial he identified defendant as the man who struck him in the face. On cross-examination he testified that he had no difficulty watching television with one eye.

Harold Manor, the tavern manager, testified there were about five people in the tavern at about 10:15 a.m. on January 18, 1975. There were only three people sitting at the bar, and he saw defendant sitting next to Whitledge. He stated that Woods and another person were standing by a counterpiece. Defendant raised his voice and said to Whitledge, "Get yourself together," and his hand came up at the same time and struck Whitledge. Manor heard something go off and noticed a gun in defendant's hand. Whitledge fell to the floor and then defendant backed out toward the door with the gun in his hand. At no time did defendant put it in his waistband. Defendant walked outside to his car, opened the door and acted like he was putting something in it. Then he shut the door and walked away. Prior to defendant telling Whitledge to "Get yourself together," Manor had not heard Whitledge say anything. Manor described the gun as "kind of silver like * * * not the color silver itself, but you know—."

Chicago police officer Joe T. Thomas testified he was directed to a car in front of the tavern which was stipulated to be defendant's vehicle and made a thorough check but did not discover anything in it. He stated the manager of the tavern gave him a description of the offender as being between the ages of 26 and 30.

Chicago police officer Marvin J. Pharr testified that on January 19, 1975, he received a call from defendant, who stated he was a friend of the officer's brother-in-law. Defendant told him he shot a man in the nose and that he wanted to give himself up to him. Defendant met him in front of the officer's house at 6 p.m. that evening. Officer Pharr subsequently went to the hospital and showed Woods a group of five photographs. Woods was able to identify the photo of defendant. Officer Pharr testified he showed the same group of photos to Whitledge, but he was unable to identify any of them.

Sam Linto testified for the defense. He stated that when defendant began walking out of the tavern, he stopped to talk to a man and woman. Then a man who had previously talked to defendant walked over and said to Frazier, "I'll blow your brains out." At that time Linton left the bar and did not see anything after that. Linton testified defendant was not a friend of his, but he had known him for five years.

Aldo Washington testified that at about 10 a.m. on January 18, 1975, he was in the tavern and saw two men begin to "tussle." He ran out the door

when he saw a short man pull out a gun. He had known defendant but was not a friend of his and did not see defendant in the bar that day.

James Jackson testified he saw defendant talk to a man for a few minutes and then stop to talk to a man and woman. He saw a short man approach defendant with a gun and then he left the tavern.

Defendant testified in his own behalf that he arrived at the tavern and asked the manager when the drug store opened. He also asked if he could make a phone call and was told he could not. He then went to the bar and ordered a drink. He told the man next to him, Clephus Whitledge, "My name is Fred, what's yours?" Whitledge said, "I don't want to know your name. I don't give a f___ what your name is." Defendant testified he started to leave, but he was called by a man he used to work with. The man introduced him to his wife and bought him a drink. Then Whitledge intruded between them. Defendant pulled his stool over and said, "Pardon me." Whitledge went away but subsequently pushed into him again. The third time Whitledge came over he pulled out a gun and stated he would kill defendant. Defendant stated he grabbed it, and when the gun went off, he thought he had shot Whitledge. Defendant said he was nervous and shaking and walked out of the tavern with the gun. He threw the gun down by the curb someplace and tried to start the car but could not. On cross-examination, defendant stated that he had never leaned on Whitledge, but Whitledge had leaned on him.

There was a stipulation that if Milton Turrey were called he would state that he was alone drinking in the bar on the morning in question and he heard someone yell, "Watch it, he's dangerous." He turned and saw defendant and a man with a gun. He then left the tavern. The State did not stipulate to the truth of that testimony.

In rebuttal, the State sought leave to introduce a conviction statement as to defendant, and defense counsel moved for a mistrial, stating it was improper to use it for impeachment after defendant was off the stand. The trial judge stated that it would allow a copy of the exhibit into the record, but he would not formally admit it into evidence and would not consider it.

Opinion

Defendant contends the State's evidence was so unsatisfactory and conflicting that it raised a reasonable doubt of guilt. As support for this contention he points out the following inconsistencies in prosecution testimony. (1) Whitledge testified that just prior to being hit he told defendant "don't be leaning on me," but Manor testified that just before defendant hit Whitledge he heard defendant say in a loud voice "Get yourself together" to Whitledge and he did not hear Whitledge say anything; (2) Woods testified that Whitledge and defendant were sitting a

couple of stools apart, but Whitledge testified that defendant was seated right next to him; and (3) Woods testified he observed defendant place what appeared to be a gun down his pants after the shot, but Manor testified that defendant backed to the door with the gun still in his hand.

■■ ■ These conflicts in testimony did not materially affect the credibility of the prosecution witnesses, and they were not relevant to the central issue of whether defendant or Whitledge produced the gun and was responsible for the shot which wounded Woods. Both defendant and Whitledge denied bringing the gun into the bar, and the question of credibility is for the trier of fact. Although several witnesses corroborated defendant's testimony in part, none testified that he actually witnessed the shooting, and the trier of fact is not bound to believe their testimony. In contrast, all three occurrence witnesses for the State testified that defendant was the only one seen with a gun. Where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733; *People v. Clark* (1964), 30 Ill. 2d 216, 219, 195 N.E.2d 631.) We cannot say that the evidence was so unsatisfactory as to leave a reasonable doubt of guilt.

■■ Defendant also contends the degree of the offense should be reduced from aggravated battery to reckless conduct, a lesser included offense. Defendant argues the evidence established, at most, that defendant mishandled a firearm, disregarding the risk that the firearm would misfire or otherwise discharge. Defendant further argues that the injury to Woods was not intended, and was not the natural consequence of striking Whitledge. However, in *People v. Hickman* (1973), 9 Ill. App. 3d 39, 44, 291 N.E.2d 523, *appeal denied* (1973), 53 Ill. 2d 609, the court stated the doctrine of transferred intent as follows:

> "One who does an unlawful act is liable for the consequences even though they may not have been intended. Thus where one in the commission of a wrongful act commits another wrong not meant by him, or where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensued as a natural and probable consequence, the one acting with wrongful intent is responsible for the unintended wrong."

See also *People v. White* (1972), 8 Ill. App. 3d 574, 290 N.E.2d 337.

■■ In this case the evidence established that defendant knowingly and intentionally struck Whitledge in the face with a gun which discharged and wounded Woods. Thus, because defendant intended to strike Whitledge with a gun, he is responsible for the resulting discharge of the weapon whether or not it was accidental.

Defendant next contends he was denied a sentence other than a penitentiary sentence on the arbitrary basis that he fell in a category of

disfavored offenders. (*People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168.) Defendant argues that the trial judge demonstrated his prejudice against him by stating he would require him to serve a penitentiary sentence whether the injury to Woods was a result of an intentional or accidental act, thereby disregarding the particular circumstances of the offense when he imposed sentence. In the alternative defendant requests that this court reduce his sentence pursuant to Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)). Defendant, age 40, argues that he has no history of violent behavior, that he surrendered himself voluntarily to the police, and that he is gainfully employed, married, and has health problems. He contends that an extended period of incarceration is not necessary to restore him to useful citizenship and requests a term of periodic imprisonment or a lesser term of imprisonment than imposed by the trial court. The record shows defendant had previously served a sentence of 2 to 3 years in the penitentiary for possession and sale of heroin and was released in 1966.

Contrary to defendant's assertion, the trial judge did not impose a prison sentence in disregard of the particular circumstances of the case, but because of those circumstances. The sentence reflects the trial judge's recognition that it is a serious offense to use a loaded revolver as a club, particularly in a place where other people are present.

In sentencing the defendant the trial court stated:

> "Mr. Frazier, I don't think you are a good candidate for probation. I think, that you have had the opportunity after being convicted of what, I think, is a serious offense, sale of narcotics, to straighten out. There is just no reason, no excuse for the incident that occurred whether or not it was a [*sic*] intentional shooting, or whether the gun discharged accidentally. Were it not for the eight years, I would be sending you to the penitentiary for a longer time than I intend to."

■■ We also find that the trial judge did not abuse his discretion in imposing the sentence of 2 to 6 years. Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)), allows us to reduce the punishment imposed by a trial court, but generally we will refrain from modifying the sentence of a trial judge who was able to observe defendant and assess the factors in aggravation and mitigation unless a clear abuse of his discretionary powers can be shown. (*People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.) Where the sentence is within the legislative limitations, a court of review will not disturb it unless it is greatly at variance with the purpose and spirit of the law or manifestly excessive. *People v. Fox* (1971), 48 Ill. 2d 239, 252, 269 N.E.2d 720; *People v. Peter* (1976), 43 Ill. App. 3d 1068, 1070, 358 N.E.2d 31.

■■ Defendant was convicted of aggravated battery after the trial

court found he caused great bodily harm to Leon Woods. Aggravated battery is a Class 3 felony subject to an indeterminate sentence of imprisonment with a maximum in excess of 1 year, but not exceeding 10 years. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(d) and par. 1005—8—1(b)(4).) We have considered the entire record and are cognizant of the matters in mitigation and aggravation. These matters were duly considered by the trial court. Nonetheless, the trial court chose to sentence defendant to 2 to 6 years. We conclude that this is not a proper case to exercise our power to reduce the sentence.

For all of the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.