THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THEODORE PSICHALINOS, Defendant-Appellant.

Second District No. 2—90—0990

Opinion filed June 17, 1992.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

The defendant, Theodore Psichalinos, was charged by amended information in the circuit court of Kane County with one count of ag-

gravated battery of a child (Ill. Rev. Stat. 1989, ch. 38, par. 12—4.3(a)) and one count of battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)). Following a bench trial, the trial court found the defendant guilty of aggravated battery of a child, dismissed the battery count and sentenced the defendant to seven years in prison.

The defendant raises the following issues on appeal: (1) whether the trial court erred in considering evidence of two separate acts by the defendant to find him guilty of the single offense of aggravated battery of a child; (2) whether the State failed to prove beyond a reasonable doubt that the victim sustained great bodily harm; and (3) whether the trial court erred in applying the doctrine of transferred intent.

The following facts are relevant to our disposition of the issues. The defendant was originally charged by information with aggravated battery of a child. The State subsequently amended the information to add a count for battery. Immediately prior to trial commencing, the State orally amended the aggravated battery of a child charge to replace the word "intentionally" with "knowingly." The defendant did not object to the oral amendment.

Dr. Antun Lesica, an emergency room physician, testified that while employed in the emergency room of Saint Joseph's Hospital on February 25, 1990, he examined the victim, Victor Alsen. He X-rayed Victor's nose, which X ray showed an undisplaced fracture of the nasal bone at the tip of the nose. According to Dr. Lesica, the injury was consistent with some type of traumatic impact. It was his opinion that it is possible for a nose to be broken without displaying bruising or other evidence of external injury. Dr. Lesica testified that he administered no treatment, nor was treatment indicated. He did not know how long the fracture had existed and had no way of telling whether the fracture was one day or six months old. On redirect examination, however, he explained that if the fracture had been six months old it would have healed. The fracture appeared to him to be recent.

Lena Alsen, Victor's mother, testified that Victor was three years old and that the defendant is his father. The defendant was 31 years of age and had lived with Ms. Alsen intermittently for approximately four years.

On the morning of February 18, 1990, the family awoke, and the defendant prepared breakfast. Ms. Alsen was in the front room with her baby, and the defendant was in the kitchen with Victor and Victor's four-year-old brother, Robert Alsen. She heard the defendant tell Victor to eat his eggs or the defendant was going to whip him. She

went into the kitchen and told the defendant to let Victor eat what he could and not to force him to eat everything.

After returning to the baby in the other room, she heard Victor start screaming and crying. Victor went into the bathroom and was vomiting. The defendant then said, "I don't play that game. Get back in the kitchen and eat your breakfast that I made." Prior to Ms. Alsen returning to the baby, the defendant obtained his belt, entered the kitchen, and told Victor he would whip him with the belt if he did not return to the table. After she told the defendant to put the belt down, he replaced it in a drawer.

She again returned to the baby in the other room and heard three "smacks" which sounded like someone slapping a cheek. She then heard Victor screaming, "no, daddy, no, daddy, don't hit me." She went into the kitchen and observed Victor with his arm up saying, "no, daddy, no, daddy." She pushed the defendant out of the way and saw blood coming from Victor's nose. The blood was also by his mouth and chin. She asked Victor what happened, and he answered that, "daddy hit him." She then pushed the defendant and said that she knew he had broken Victor's nose. The defendant responded that they were his kids and that he should feel free to hit or smack them.

Ms. Alsen then went to call the police, but the defendant ripped the telephone out of the wall and threw it into the front room. When she tried to go to the back door to get to the neighbors, he started punching her. Later that afternoon, she argued with the defendant about her wanting to leave to get cigarettes. She was sitting on a bed, and the defendant came in with a comb and a brush in his clenched fist. He swung at her, and she moved her leg to avoid being hit. Victor was on the edge of the bed watching television, and the defendant hit him on the side of the nose with the errant swing. Victor fell on the floor. When he got up he had blood running from his nose to his mouth and chin, and he was crying. When she attempted to leave the apartment to call the police, the defendant dragged her back inside and started pounding on her. According to Ms. Alsen, after she cleaned Victor, she did not notice anything unusual about his nose. The following day, she observed a purple, red and yellow mark under his left eye. The bruise lasted a day or two and then began to fade.

On February 25, 1990, she was ordered by the police to take Victor to the hospital. She delayed that long in doing so because the defendant kept her locked up and would beat her every time she would go to the front door. According to Ms. Alsen, Victor never

tripped or fell on anything between February 18 and February 25, 1990.

On cross-examination, Ms. Alsen testified that defendant was employed as a roofer and normally worked days. She stated that she could not take Victor to the hospital without transportation, but she did so at the suggestion of the police. She called the police on February 25 because the defendant had called her from his sister's home and threatened to bring a gun home. She had called his sister's about four times that day to determine when the defendant was coming home so she could have the children sleeping when he arrived.

According to Ms. Alsen, there were about 10 police officers who came to her apartment. She told the police about the defendant striking Victor in the nose, but they did not detain the defendant. On the following day, the police returned to the apartment with a State investigator and arrested the defendant.

Four-year-old Robert Alsen testified that he remembered the day when Victor did not eat his eggs. He stated that Victor got a broken nose when the defendant punched Victor in the nose. Robert demonstrated what happened by forming a fist with his right hand and putting it over his nose. He further testified that the defendant used a closed hand. When asked what Victor did, Robert replied that he would not eat his eggs. Blood came from Victor's nose, and Victor cried when the defendant punched him in the nose.

On cross-examination, Robert testified that he was told what to say by his mother and the assistant State's Attorney. On redirect examination, he stated that his testimony was based on what happened and what he observed.

Theresa Gordon, a neighbor of the defendant's at the time of the incident, testified that she was at the defendant and Ms. Alsen's apartment on February 18, 1990. The defendant and Lena Alsen were arguing, and the defendant attempted to hit Ms. Alsen. When Ms. Alsen moved, the defendant hit Victor with a closed fist. Later that week, Gordon observed a deep blue bruise on the side of Victor's nose.

Joseph Schlosser, a child protective investigator with the Department of Children and Family Services (DCFS), testified that he observed Victor Alsen on February 26, 1990, at the Alsens' residence. Victor had faint yellow bruising around both of his eye orbits and nose.

Following the denial of the defendant's motion for a directed finding, John Miller testified on behalf of the defendant that he accompanied the defendant to the defendant's apartment on the evening of

February 25, 1990. According to Miller, three police officers arrived shortly thereafter. One of the officers became upset with Lena Alsen and asked her why she had not taken Victor to a doctor. She responded that she was going to do it tomorrow. The officer told the defendant he did not have to leave, but the defendant said he would rather go.

Dawn McKiness, the defendant's sister, testified that, from the time defendant arrived at her house on February 25 until the middle of the night, Lena Alsen telephoned about 40 to 50 times. She made more telephone calls the next morning.

On cross-examination, Ms. McKiness testified that her relationship with Lena Alsen was not the greatest. Ms. McKiness admitted to having been convicted of the unlawful possession of a controlled substance in 1989 and of felony theft approximately 10 years prior to trial. The defendant recalled Ms. McKiness, who testified that the defendant came to her apartment on February 18, 1990, accompanied by Victor. There was nothing unusual about or wrong with Victor, and he was laughing and talking to her.

The defendant testified that on February 18, 1990, he and Victor were playing in the boys' room when Victor tripped on exposed carpet staples and fell on his nose on the hardwood floor. Victor's nose had a little drop of blood under it; the defendant wiped it off, and it stopped bleeding. The defendant denied striking Victor at any time on February 18 or on any other day.

The defendant was home part of each day of the week from February 18 to February 26, 1990, although he was not there all of the time. He did not notice any signs of any kind of injury to Victor's nose or any swelling or discoloration. Victor did not complain about his nose during that week.

On cross-examination, the defendant stated that Victor ate his eggs on the morning of February 18, 1990, and he denied that Victor threw up. He further denied ever hitting the children with a belt. He also denied fighting with Lena Alsen on February 18 or having argued with her.

On rebuttal, Lena Alsen stated that the defendant and John Gordon had removed all of the carpet staples from the boys' room prior to February 18, 1990. She denied telephoning Dawn McKiness approximately 40 times on the evening of February 25 and also denied calling her in the middle of the night.

On cross-examination, Ms. Alsen stated that the week following February 18 the defendant was home 24 hours a day and never left the house. On redirect examination, she admitted that there were

times when he did step out to the neighbors for a few minutes. She also testified that the defendant did not work that week. Upon being questioned by the court, Ms. Alsen stated that the defendant did not go to his sister's on February 18 and that he remained at home the entire day.

The defendant testified in surrebuttal that he was away from the home everyday for at least an hour or two during the week of February 18 to February 25, 1990.

In issuing his oral decision, the trial judge stated that he did not "consider the crack in the nose whether it was caused or not caused by what happened on the 18th of February all that significant." The judge further stated that he was "not really relying too much on the mother's testimony" but that he was relying on Theresa Gordon's testimony. The court also relied on the testimony of Robert Alsen concerning the defendant hitting Victor with his fist for not eating his eggs. Finally, the court added that Schlosser's testimony that Victor had a bruise on his face a week later evidenced great bodily harm regardless of whether the defendant fractured Victor's nose. The court found the defendant guilty of aggravated battery of a child and dismissed the battery charge as being a lesser-included offense.

The defendant filed a written, post-trial motion asking the court to set aside the finding or to order a new trial. In that motion, the defendant contended, among other things, that the State failed to prove him guilty beyond a reasonable doubt and that there was no credible evidence that the victim suffered great bodily harm or that the victim sustained an injury as a result of any specifically intended action by the defendant.

At the hearing on the defendant's post-trial motion, the State argued that the defendant's intent to hit Lena Alsen was transferred to Victor. The defendant responded that transferred intent does not apply to a specific intent offense. He further maintained that an injury has to be specifically and intentionally inflicted on a child and that transferred intent is inapplicable in this case. In denying the motion, the trial court stated that there was no question that the defendant "intended to hit somebody."

At the sentencing hearing, the judge added that he viewed the fact that the defendant hit Victor with his fist for not eating his eggs as more serious than attempting to hit Lena Alsen and hitting Victor. The court further explained that "[i]f that's all there was, I may not have found you guilty. But on the not eating eggs incident, that I do find a little bit more serious than swinging at somebody and missing her and hitting somebody else." The court sentenced the defendant to

seven years' imprisonment on the aggravated battery to a child conviction.

The defendant first contends that the trial court erred in finding him guilty of a single offense based upon evidence of two separate acts that cumulatively resulted in the victim's injuries. The defendant maintains that the evidence of great bodily harm, if any, occurred after the second incident and that the finding that he acted knowingly was based on the erroneous application of transferred intent to the second incident. Finally, he argues that the use of evidence of the two separate incidents violated the philosophy of the one act/one crime doctrine. The State responds initially that the issue is waived because the defendant did not challenge the information, failed to object at trial and did not include the issue in his post-trial motion.

In either a bench trial or a jury trial, in order to properly preserve issues for appeal, a defendant is required to make both a trial objection and a written, post-trial motion raising the issues if the alleged errors could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Even if the error could not have been raised during trial, the alleged error must be presented in a written, post-trial motion. (Ill. Rev. Stat. 1989, ch. 38, par. 116—1; see *Enoch*, 122 Ill. 2d at 187.) Failure to comply with the statutory requirement of filing a post-trial motion or to raise an issue in the post-trial motion limits our review to constitutional issues which have properly been raised at trial and which can be raised later in a post-conviction hearing petition, sufficiency of the evidence issues, and plain error. See *Enoch*, 122 Ill. 2d at 190.

In the present case, the defendant did not raise the issue he now presents on appeal in his written, post-trial motion. He maintains, however, that we should nevertheless consider the issue as plain error. The plain error doctrine may be invoked in a criminal case to review an error which has not been properly preserved for review if either the evidence is closely balanced or the error is of such magnitude that the defendant was denied a fair trial. (*People v. Nitz* (1991), 143 Ill. 2d 82, 108.) The plain error rule prevents an innocent person from being convicted because of error which is obvious from the record but not properly preserved. (*Nitz*, 143 Ill. 2d at 108.) We believe that, if in fact the trial court erroneously combined the evidence of both incidents in finding that the State had proved the elements of aggravated battery against a child, such error would have denied the defendant a fair trial. We will, therefore, consider the issue notwithstanding the defendant's failure to raise it in his written, post-trial motion.

Accordingly, we turn to the merits of the defendant's claim that it was improper for the trial court to combine the evidence of the two incidents to find proof beyond a reasonable doubt of the single offense of aggravated battery of a child. The defendant cites no authority to support this contention, other than cases addressing the issue of whether a series of acts were sufficiently separate to charge a defendant with multiple offenses. (See *People v. Segara* (1988), 126 Ill. 2d 70; *People v. King* (1977), 66 Ill. 2d 551.) Those cases are inapplicable, however, as the defendant here was charged with only one count of aggravated battery of a child and one count of the lesser-included offense of battery.

Section 12—4.3(a) provides, in pertinent part, that "[a]ny person of the age 18 years and upwards who intentionally or knowingly, and without legal justification and by any means, causes great bodily harm or permanent disability or disfigurement to any child under the age of 13 years *** commits the offense of aggravated battery of a child." (Ill. Rev. Stat. 1989, ch. 38, par. 12—4.3(a).) Count I of the information, as amended, charged that on or about February 18, 1990, the defendant, "a person over the age of 18 years, [knowingly] and without legal justification caused great bodily harm to Victor Alsen, a chiLd [*sic*] under the age of 13 years, in that he struck Victor Alsen in the face causing a fractured nose."

■ Under these circumstances, it was not error for the court to have considered evidence of both incidents in finding the State proved the defendant guilty beyond a reasonable doubt of the offense as charged. Both incidents occurred on the date in the information. Both incidents involved the same victim, Victor Alsen. Furthermore, both incidents involved the defendant striking Victor in the face. The defendant was adequately informed of the crime for which he was charged (see *People v. Thomas* (1990), 137 Ill. 2d 500, 521-23), and the evidence of both incidents was properly considered by the trial court as being relevant to the aggravated battery of a child charge.

■ Having concluded that it was proper for the trial court to have considered evidence of both incidents to find the defendant guilty of aggravated battery of a child, we must next consider the issue of whether the doctrine of transferred intent is applicable to the circumstances of the second incident. This is so because if transferred intent does not apply, then the defendant's striking of Victor Alsen the second time must be viewed as an accidental act and cannot properly be considered as evidence of aggravated battery of a child. The defendant argues that aggravated battery of a child is a different crime from aggravated battery and battery because of its additional

element that the victim be a child under 13 years old, and, therefore, the intent necessary for the latter two offenses cannot be transferred to the former.

Section 12—4 provides that "[a] person who, in committing a battery, intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery." (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(a).) As discussed earlier, section 12—4.3(a) provides that a person over the age of 18 who "intentionally or knowingly, and without legal justification and by any means, causes great bodily harm or permanent disability or disfigurement" to a child under 13 commits aggravated battery of a child. (Ill. Rev. Stat. 1989, ch. 38, par. 12—4.3(a).) The defendant here was charged with having acted knowingly. We have previously held, in the context of the aggravated battery statute, that when a statute is defined in terms of a particular result, a person is said to act knowingly when he is consciously aware that his conduct is practically certain to cause the result. (*People v. Herr* (1980), 87 Ill. App. 3d 819, 821; see Ill. Rev. Stat. 1989, ch. 38, par. 4—5(b).) Thus, under the aggravated battery statute, a defendant, if he has been charged with acting knowingly, must be consciously aware that his conduct is practically certain to cause great bodily harm.

The offense of aggravated battery of a child has the same provision concerning knowledge and causing great bodily harm as the aggravated battery statute. It is defined in terms of a particular result. Section 4—5(b) should apply equally, therefore, in requiring that a person, to act knowingly, must be consciously aware that his conduct is practically certain to cause the result. Accordingly, the mental state of knowledge is the same as to both the offense of aggravated battery based on great bodily harm to an adult and the offense of aggravated battery of a child.

That brings us to the precise question of whether such a mental state can be transferred in this case. In *People v. Hickman* (1973), 9 Ill. App. 3d 39, the court stated that "[o]ne who does an unlawful act is liable for the consequences even though they may not have been intended." (9 Ill. App. 3d at 44.) Where someone in the commission of a wrongful act commits another wrong not intended, or where in the execution of an intent to do wrong, an unintended act resulting in a wrong ensued as a natural and probable consequence, the one acting with a wrongful intent is responsible for the unintended wrong. (*Hickman*, 9 Ill. App. 3d at 44; see *People v. Frazier* (1977), 53 Ill. App. 3d 884, 888.) We believe the doctrine enunciated in *Hickman* is broad enough to encompass the circumstances present here.

Here, the defendant acted knowingly as to Lena Alsen in that he closed his hand, containing a brush and comb, into a fist and swung his fist at her. It would not have been unreasonable for the trial court to have concluded that the defendant was consciously aware that his conduct was practically certain to cause a particular result, great bodily harm to Lena Alsen. The defendant missed Lena Alsen, however, and struck Victor in the nose with his closed fist containing the comb and brush. The result which his conduct was practically certain to cause, great bodily harm to Lena Alsen, became great bodily harm to Victor. While the defendant's mental state embraced a wrongful act against Lena Alsen, he committed the wrong against Victor Alsen instead. Under these circumstances, it was proper for the trial court to find that as to the second incident the defendant had the requisite mental state as charged in the information. Consequently, the court could properly consider evidence of the second incident along with the first incident in determining whether the State proved the defendant guilty beyond a reasonable doubt, provided, of course, there was also sufficient evidence that the defendant's conduct caused great bodily harm to Victor.

The remaining issue, then, is whether the State proved the defendant guilty beyond a reasonable doubt of having inflicted great bodily harm. The defendant argues that the evidence of a bruise on Victor's face was insufficient to prove great bodily harm. He also asserts that there was insufficient evidence to connect the fracture of Victor's nose with the conduct of the defendant in striking him.

The infliction of great bodily harm is an essential element of the offense of aggravated battery of a child. (Ill. Rev. Stat. 1989, ch. 38, par. 12—4.3(a).) In the context of aggravated battery, great bodily harm has been held not susceptible of precise legal definition. It requires an injury of a greater or more serious character than ordinary battery. (*People v. Figures* (1991), 216 Ill. App. 3d 398, 401.) The determination of whether great bodily harm has occurred centers upon the injuries the victim received (*Figures*, 216 Ill. App. 3d at 401) and does not depend upon whether the victim received medical attention. (*People v. Jordan* (1981), 102 Ill. App. 3d 1136, 1140.) The question of whether a victim's injuries constitute great bodily harm is one to be decided by the trier of fact. *Figures*, 216 Ill. App. 3d at 401.

 In this case, the evidence established that after the first incident in which the defendant struck Victor while in the kitchen, Victor's nose was bleeding and that he cried when the defendant hit him in the nose. Lena Alsen testified that, as a result of the defendant hitting Victor the second time with his fist, Victor's nose again bled and

he fell on the floor and cried. The following day, Victor had a purple, red and yellow mark under his left eye. Theresa Gordon testified that later that week she observed a deep blue bruise on the side of Victor's nose. Additionally, Joseph Schlosser of DCFS testified that on February 26, 1990, he observed a faint yellow bruise around Victor's eyes and nose. Moreover, Dr. Lesica testified that Victor had a non-displaced fracture of his nose on February 25, 1990. We believe this evidence cumulatively supports the trial court's finding that Victor suffered great bodily harm. The fact that Victor was punched twice by an adult which caused his nose to bleed and a bruise to develop that lasted at least a week, coupled with evidence that he suffered a fractured nose, supports this finding.

■ Even though there was no direct evidence that either of the blows inflicted on Victor by the defendant caused the fracture of his nose, Dr. Lesica's testimony circumstantially supports such an inference. While he initially testified that he did not know how long the fracture had existed and that the fracture could have been one day old or six months old, he testified on redirect examination that if the fracture had been six months old it would have healed and that it appeared to be recent. Based upon this testimony, it was reasonable to infer that the fracture resulted from one of the two blows administered by the defendant. Our conclusion is unaffected by the fact that Victor was not seen by a doctor until a week after the incidents. The decision of when Victor, a three-year-old child, would receive medical attention for his injuries was controlled by his mother and the defendant and was not dictated by the nature and extent of the injuries. More importantly, the question of whether Victor suffered great bodily harm is independent of whether he received medical attention for his injuries. See *Jordan*, 102 Ill. App. 3d at 1140.

Even were we to determine that the doctrine of transferred intent did not apply to the second incident, there is sufficient evidence based upon the first incident alone to support the trial court's finding of guilty. Robert Alsen testified that the defendant punched Victor in the nose with his fist with sufficient force to cause bleeding. The defendant must be deemed to have known that this conduct was practically certain to cause great bodily harm to a three-year-old child.

While denying that he struck any blows, the defendant contends that the witnesses' testimony concerning his alleged criminal misconduct in attempting to strike Lena Alsen, while clenching a comb and brush in a closed fist, injects a reasonable doubt that the fracture and bruising can be traced to the initial striking incident. There is no reason to doubt, however, that the first blow could have caused the seri-

ous bruising of the child's face and nasal bone fracture. In the absence of any evidence that only the subsequent blow was sufficiently forceful to have produced these effects, the trial court had a reasonable basis for attributing them to the initial striking. The relevant test is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Campbell* (1992), 146 Ill. 2d 363, 374; *People v. Tye* (1990), 141 Ill. 2d 1, 13-14.

We conclude, therefore, that the trial court was not required to disregard evidence of the second incident; however, there was adequate evidence independent of that incident to support the conviction.

For the foregoing reasons, we affirm the judgment of the circuit court of Kane County.

Affirmed.

McLAREN and WOODWARD, JJ., concur.