2020 IL App (2d) 180204-U
No. 2-18-0204
Order filed June 24, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-179 |
| MICHAEL MOSER-BOOTH, | ) ) | Honorable Linda Abrahamson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Zenoff and Hudson concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The evidence that the defendant knowingly caused great bodily harm was sufficient to support his conviction.

¶ 2     The defendant, Michael Moser-Booth, appeals from his conviction of armed violence, arguing that there was insufficient evidence that he knowingly caused great bodily harm, which is a requirement for the predicate felony of aggravated battery.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On April 16, 2016, the defendant held a knife to the throat of Jossuar Diaz.  The knife pierced Diaz, entering under his jaw and going in about four centimeters deep, causing injury and

permanent damage, although Diaz survived. The defendant was charged with attempted first degree murder (720 ILCS 5/8-4(a) (West 2014); 720 ILCS 5/9-1(a)(1) (West 2014)) and armed violence (720 ILCS 5/33A-2 (West 2014); 720 ILCS 5/12-3.05(a)(1) (West 2014)).

¶ 5    At trial, multiple witnesses testified about the incident. The victim, Diaz, was at a bar with some of his co-workers, who included a woman named Yadira. The defendant was Yadira's boyfriend. The group was playing pool and eating and drinking beer. At some point, the defendant entered the bar. He yelled at Diaz to "stay away" from Yadira. Diaz stood to retrieve his keys and wallet from the bar and the defendant pushed Diaz so his back was against the bar. The defendant also said something about killing Diaz, either saying "I will kill you" (per Diaz) or "I should just kill you" (per the defendant). The defendant took out a knife and held it up to Diaz's neck, with the point under Diaz's chin. The defendant was grasping the knife with his fingers on the base of the blade; one witness said that about one inch of the blade protruded beyond the defendant's grasp. Another witness heard the defendant say, "I'll stab you." The knife pierced the underside of Diaz's jaw and went into his mouth. Diaz began bleeding and the defendant ran out of the bar.

¶ 6    An off-duty Aurora police officer, Christopher Cox, was in the bar when the defendant came in and got into an altercation with Diaz. The bar manager told Cox that someone had been stabbed. After checking that Diaz was conscious and alert, Cox followed the defendant out of the bar into the parking lot. The defendant was pacing back and forth with the knife in his hand. Cox ultimately tackled the defendant from behind and got him on the ground. By then, police and fire personnel had arrived. The defendant was screaming that he wanted to die and he put the knife to his throat. Another officer took the knife from him and he was taken from the scene.

¶ 7    The paramedic who responded to the bar found Diaz bleeding, but there was no injury to his artery and he was able to speak. The paramedic saw a half-inch-wide entry wound on the left

midline of Diaz's neck that appeared to go up under the jaw. Diaz was taken to the hospital. The surgeon who examined him found that Diaz's wound was about four centimeters long and included some arterial bleeding that required immediate surgery. The incision caused by the knife, which the surgeon was forced to extend in order to view the damage, went through the floor of the mouth and up into the back of the throat, injuring two muscles in that area, a salivary gland, and a tonsil. Other critical structures near the wound that were not injured included the esophagus, trachea, carotid sheath (which contains the carotid artery), the jugular vein, and the vagus nerve.

¶ 8    The defendant testified on his own behalf as follows. On the evening of the incident, he was out with friends when he learned that Yadira was at a bar and Diaz was also there. He got a friend to give him a ride to the bar because he wanted to confront Diaz, whom he believed had made advances toward Yadira. Although he did not usually carry a knife, he had brought one with him to the bar that night "for protection." When he found Diaz, Yadira and another co-worker at the bar, he began yelling at Diaz to stay away from Yadira, hoping to scare Diaz off. Diaz yelled back. The defendant testified that he then pulled out a knife and held it to Diaz's neck, intending "[t]o scare him, to make him think" and hoping that Diaz would "run away" and not fight with him. He did not intend to stab or kill Diaz. He did not realize that he had cut Diaz until he saw the blood, which shook him. He left the bar and went out to the parking lot where he waited for police.

¶ 9    On cross-examination, the defendant agreed that he had told police that when he entered the bar and approached the group of co-workers, he told Diaz, "I should beat the f*** out of you, I should just f***ing kill you." He also told the police that he had meant to scare Diaz by giving him "a little fake poke or a jab" with the knife.

¶ 10    The jury found the defendant not guilty of attempted murder, but convicted him of armed violence.  He was sentenced to 12 years in prison.  After his motion to reconsider sentence was denied, he filed this appeal.

¶ 11                                    II. ANALYSIS

¶ 12    The sole issue raised in the appeal is the sufficiency of the evidence as to the defendant's mental state—specifically, whether the evidence was sufficient to allow the jury to find that the defendant knew that his actions were practically certain to cause great bodily harm to Diaz.  The defendant concedes that the jury could properly have found that he knowingly caused *some* bodily harm.  He argues, however, that the evidence did not show that he knew he would cause *great* bodily harm.  He therefore asks us to reduce his conviction to a lesser included offense (aggravated battery) that is consistent with intending less harm, and remand for resentencing.

¶ 13    In evaluating the sufficiency of the evidence, it is not the province of this court to retry the defendant.  *People v. Collins*, 106 Ill. 2d 237, 261 (1985).  The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (Emphasis in original.)  *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The weight to be given to the witnesses' testimony, the determination of their credibility, and the reasonable inferences to be drawn from the evidence are all matters within the jurisdiction of the trier of fact.  *People v. Smith*, 185 Ill. 2d 532, 542 (1999); *Collins*, 106 Ill. 2d at 261-62.  Likewise, the resolution of any conflicts or inconsistencies in the evidence is also within the province of the fact finder.  *Collins*, 106 Ill. 2d at 261-62.  We will set aside a criminal conviction only "where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt."  *Smith*, 185 Ill. 2d at 542.

¶ 14    The defendant was convicted of armed violence, which in turn was predicated on his commission of an aggravated battery causing great bodily harm. To support the conviction, the State was required to prove that the defendant acted knowing that he would cause great bodily harm. 720 ILCS 5/12-3.05(a)(1) (West 2014). Proving that the defendant's actions were intentional (a fact that he did not contest) was not enough to meet this threshold; the State was also required to prove that he knew the *extent* of the harm that would result (great bodily harm). *People v. Willett*, 2015 IL App (4th) 130702, ¶ 53. In the context of the offense charged here, that means that the evidence must be sufficient to show that the defendant was "consciously aware that his conduct [was] practically certain to cause great bodily harm." *People v. Psichalinos*, 229 Ill. App. 3d 1058, 1067 (1992).

¶ 15    The defendant argues that the direct evidence did not show that he knowingly caused Diaz great bodily harm, because he testified that he did not intend for the knife to go into Diaz's neck; he only meant to scare Diaz and warn him off from pursuing Yadira. However, the defendant conceded that he knowingly held the knife to Diaz's neck, and he admitted to the police that he meant to give Diaz a poke or a jab with it. This is direct evidence that he intended the knife to enter Diaz's neck, even if he did not intend it to go in very far. The evidence also indicated that the defendant was holding the knife with his fingers covering part of the blade, suggesting that the defendant meant any penetration to be limited. Nevertheless, because the neck is a particularly vulnerable area containing multiple vital structures (the carotid artery, the jugular vein, and the trachea, to name just a few), the intentional use of a knife to penetrate someone's neck amply supports a finding that the defendant knew his actions were practically certain to cause great bodily harm. There is no indication in the evidence that anything other than luck as to the route traversed by the blade prevented Diaz from being killed that night.

¶ 16    Further, the evidence shows that the defendant was highly upset: he went to the bar to confront Diaz, he began shouting at Diaz immediately upon entering the bar, he said either that he would or should kill Diaz, he pushed Diaz when Diaz stood up to get his keys, and he then drew his knife and held it against Diaz's neck. One witness recalled the defendant saying "I'll stab you" to Diaz immediately before doing so. Both the blood on the knife and the doctor's measurement of the entry wound showed that the defendant pushed the knife about halfway into Diaz's neck. All of this evidence supports the jury's finding that the defendant knew that he was practically certain to cause great bodily harm. *Id*. at 1067. We reject the defendant's argument that the evidence of his mental state was insufficient to convict him.

¶ 17                                III. CONCLUSION

¶ 18    For the reasons stated, the judgment of the circuit court of Kane County is affirmed.

¶ 19    Affirmed.